### FIRST NAT. BANK OF BEAUMONT v. UNION TRUST CO. et al.

(Court of Civil Appeals of Texas. Austin. March 12, 1913. Rehearing Denied April 9, 1913.)

BANKS AND BANKING (§ 166*) — FOLLOWING TRUST FUNDS—BANK COLLECTIONS.

Where claimant sent a note to a trust company having many branches for collection, and the branch at the place where the maker resided collected the money, and almost immediately, before remitting, the trust company was declared insolvent and a receiver appointed, and there came into the receiver's hands from all the branches an amount much greater than was necessary to pay the collection, claimant was entitled to a preferred claim for the amount thereof, being entitled to treat the money found in the possession of the trust company as an equivalent for the money collected and held in trust, though there were not sufficient funds in the branch where the money was collected, which passed into the hands of the receiver, to pay the entire claim.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 574–578, 586; Dec. Dig. § 166.*]

Appeal from District Court, Travis County; George Calhoun, Judge.

Action by the State against the Union Trust Company for dissolution, in which the First National Bank of Beaumont filed a claim for preference concerning certain items sent to the insolvent company for collection. From a judgment allowing the claim, but refusing the preference, claimant appeals. Reversed, and preference allowed.

The nature and result of this suit are stated as follows in appellant's brief:

"This suit was instituted by the state of Texas, as plaintiff, against the Union Trust Company, an insolvent banking corporation created by special act of the Legislature of Texas, as defendant, for the purpose of securing the appointment of a receiver of said Union Trust Company and a winding up of its affairs and distribution of its assets among its creditors. After the appointment of the receiver, the appellant herein, First National Bank of Beaumont, by leave of court, intervened in the cause and set up a claim against the Union Trust Company for certain moneys due said intervener by the Union Trust Company; said moneys being the proceeds of a promissory note belonging to intervener which had by intervener been transmitted to the Union Trust Company for collection. The intervener prayed in its petition for judgment against the Union Trust Company for the amount of the collection and for the allowance of a preference over the general creditors of the Union Trust Company in the payment of its said claim. The judgment of the trial court was in favor of intervener for the amount due it on its said claim, but denied to intervener any preference over general creditors of the Union Trust Company for the payment of its claim. The sole question presented on this appeal is whether or not intervener is entitled to a preference. The case was submitted to the trial judge and will be submitted here on an agreed statement of facts, and it is also agreed that, if the ruling of the trial judge to the effect that intervener is not entitled to a preference for its claim be correct, then the judgment should be affirmed; if the ruling be otherwise, it is agreed that the judgment of the trial court should be reversed, and judgment here rendered in favor of intervener for payment of its claim in full."

Counsel for appellee concedes the correctness of that statement, with the addition of stipulation No. 3 of the agreement in reference to the transcript, which stipulation will hereafter be set out. The case was submitted to the trial court upon an agreed statement of the material facts, which agreement reads as follows:

"Come now the First National Bank of Beaumont, intervener in the above-styled and numbered cause, and T. H. Davis, receiver of the Union Trust Company, and agree that the material facts relevant to said intervention are as follows, to wit:

"(1) The Union Trust Company is a private corporation, created by special act of the Legislature of Texas, passed in the year 1870, and was up to the 10th day of January, 1910, doing a general banking business with places of business at Austin, Tex., San Antonio, Tex., Aransas Pass, Tex., Manor, Tex., and several other points, hereinafter designated.

"(2) The intervener is a banking corporation duly chartered and incorporated under the banking laws of the United States of America and has its principal office and place of business in Beaumont, Jefferson county, Tex.

"(3) On the 10th day of January, 1910, this court, by its order entered in this cause, appointed T. H. Davis receiver of the property and effects of defendant herein, the Union Trust Company, and said T. H. Davis on the same day duly qualified as such receiver and took possession of the property and effects of said defendant. Said receiver, upon taking possession of the effects of said defendant, found on hand and in its possession the sum of $19,175.84 in cash; said cash was situated in the vaults of said defendant as follows, to wit: At San Antonio, $2,271.93; at Aransas Pass, $233.75; at Lockhart, $4,595.73; Austin, $815.91; Band-

era, $2,877.35; Boerne, $1,534.35; Christine, $1,024.57; Kyle, $1,592.55; Lavernia, $38.39; and at Manor, $2,191.31. The assets of the Union Trust Company are not sufficient to pay its debts in full. The receiver also, upon taking charge of the property of said trust company, found on hand in cash in the express office at Aransas Pass the sum of $2,-000, which was the property of said defendant. Said sum of $2,000 had been deposited by the agents of the defendant with the express company at San Antonio, Tex., on January 8, 1910, for transmission to its Aransas Pass branch, and arrived at Aransas Pass on the 10th day of January, 1910.

"(4) On January 1, 1910, intervener was the holder and owner of a certain promissory note bearing date at Aransas Pass, Tex., November 5, 1909, by the terms of which the Brooke Lumber Company, 60 days after date, promised to pay to the order of the Beaumont Shingle & Lumber Company, at the office of the Union Trust Company at Aransas Pass, Tex., $322, with interest at the rate of 8 per cent. per annum on said sum from the date of said note until paid. On January 5, 1910, said intervener forwarded said promissory note to the Union Trust Company at Aransas Pass, Tex., for collection, and in the letter accompanying said note instructed said Union Trust Company to collect the money due on said note and to return the proceeds thereof to said Beaumont Bank at Beaumont, Tex. On January 7, 1910, the maker of said note, Brooke Lumber Company, paid the full amount due thereon, including interest to said Union Trust Company, and said Union Trust Company, in receiving said note and in making said collection, merely acted as the agent of said Beaumont bank for the collection and return of said money, and said Beaumont Bank was not in any sense a general depositor of said Union Trust Company, so far as the proceeds of said note are concerned. Said Union Trust Company has never remitted to said Beaumont Bank the proceeds of said collection or any part thereof. Other similar claims on account of paper sent to the Aransas Pass branch of the Union Trust Company for collection and return have been filed and denied preference.

"The various branches of the Union Trust Company were operated as follows: Each branch kept an account with its various depositors, and no account of the depositors of one branch was kept in the main office or in any branch office; a depositor in one branch was not a depositor in the main office or in any other branch, and his checks would not have been honored, except when drawn upon the branch in which the money had been deposited; the checks, deposit slips, passbooks, and other literature were made and issued in the name of the 'Union Trust Company, Lockhart Branch,' or 'Union Trust Company, Aransas Pass Branch,' etc.

"The main office of the Union Trust Company was indebted to every branch of said company, except the one at Lockhart, at the time of the appointment of the receiver herein whenever any branch of the Union Trust Company got more money on hand than was deemed necessary to transact its current business; upon demand, the excess was sent and charged to the main office of the company at San Antonio; and, whenever the supply of money on hand at any particular branch became insufficient to transact the ordinary business thereof, the main office of the Union Trust Company at San Antonio would send it a sufficient amount of money to keep its doors open and to meet its current demands and charge its account with such amount."

Stipulation No. 3 contained in the agreement in reference to the transcript reads as follows:

"(3) It is further agreed by said parties, with the approval of the court, that if the intervener is entitled only to a judgment for preference against the actual cash found by the receiver in the vaults of the Union Trust Company at Aransas Pass, Tex., then the judgment of the trial court should be affirmed, but that, if said intervener is entitled to a preference against the funds of the Union Trust Company found by the receiver in the branches of the Union Trust Company other than the Aransas Pass branch, then the judgment of the trial court should be reversed and judgment rendered by the Court of Civil Appeals that the intervener's claim, as established by the judgment of the trial court, be paid in full."

Gregory, Batts & Brooks, of Austin, for appellant. J. B. Robertson, of Austin, for appellees.

KEY, C. J. (after stating the facts as above). Counsel for appellant contend that the trial court committed reversible error in refusing to accord to appellant's claim a preference over general creditors, and rely upon Continental Nat. Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85, in support of that contention. Counsel for appellees controvert that proposition and presents the contention that Bank v. Weems supports the action of the trial court in this case in refusing to allow the preference contended for. In that case our Supreme Court dealt with a case in which a bank had received from another bank certain claims for collection and return, and had collected a portion of them, and had indorsed and discounted the remainder and used the money received by such discount in the payment of its own debts; and, from the time it collected a portion of the claims until the receiver was appointed, it had on hand more money than the amount so collected.

Upon that state of facts, the Supreme Court held that the bank which sent the claims for collection was entitled to a preference over general creditors to the extent

of the amount of money which the other bank had collected upon those claims, but was not entitled to a preference as to the claims not collected and used by the other bank in the payment of its debts; and, in discussing the question as to the right of preference for the money collected, the court said: "We think, therefore, that, when the City Bank collected these last notes, it acted in a fiduciary capacity, and received the proceeds in trust for the Continental National Bank, and that it was its duty to remit them to the latter. This brings us to the further question whether, under the circumstances of this case, they were divested of their character of trust funds when they were placed by the collecting bank in its vaults and there mingled with other moneys. It is a principle of equity, long recognized and applied, that, when one who is intrusted with the money of another invests it in property, the cestui que trust may follow the funds, and, fixing upon the property the character of the original trust, may claim it as his own. Ryall v. Rolle, 1 Atk. 172; Scott v. Inman, 4 Wells, 400; Burdett v. Willett, 2 Vernon, 638. But in an early case it was said: 'If the factor have money it shall be looked upon as the factor's estate and must first answer the debt of a superior creditor, * · * * for, in regard that money has no earmark, equity cannot follow that in behalf of him that employed the factor.' Whitcombe v. Jacob, 1 Sack, 160. The idea thus suggested seems long to have prevailed in the courts of England. But at a later day a different doctrine has been established in these courts (Taylor v. Plumer, 3 Mau. & S. 562; Pennell v. Diffil, 4 M., D. & D. 372; Knatchbull v. Hallett, L. R. 13 Ch. Div. 696), and has generally been applied in the courts of last resort in this country in the more recent cases. Nat. Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Brocchus v. Morgan (Tenn.) 5 Cent. Law J. 53; People v. Rochester Bank, 96 N. Y. 32; Harrison v. Smith, 83 Mo. 210, 53 Am. Rep. 571; Stoller v. Coates, 88 Mo. 514; Peak v. Ellicott, 30 Kan. 156, 1 Pac. 499, 46 Am. Rep. 90. The rule thus followed in the cases last cited we think is founded upon the better reason. Where the trustee kept the fund separate, and the original money was capable of being identified, there never was any question. The dictum above quoted is not understood as having been applied to such a case. It is where the trustee has mingled the trust money with the mass of his other funds that the difficulty arises. It may be that, when the entire mass is once paid away, the right to claim a trust in any money or property is forever lost. But if, as in the present case, throughout all the trustee's dealings with the funds so mingled together, he keeps on hand a sufficient sum to cover the amount of the trust money, we think it capable of demonstration that the trust should attach to the balance that is found to remain in his hands. Let us take the case before us for an illustration. It is shown by the evidence that after the bank received the money, amounting to about $5,000, its cash assets were never reduced below the sum of $6,000 until they went into the receiver's hands. Even admitting that, in course of its transactions, this identical money was paid out by the bank to its uttermost farthing, yet we know that every dollar so expended left its representative and exact equivalent in the vault from which it was taken, and that, when again the money so left was expended, it left in turn its equivalent behind it. We see, therefore, that, whatever changes may have taken place in the funds from the receipts and expenditures of the bank, the balance left at the date of its failure was the result of the proceeds of the notes to the extent to which such balance was thereby increased, and that the case which went into the hands of the receiver should be deemed the representative of those proceeds and impressed with the trust character which pertained to them. The equity would have been no stronger if the City Bank had used appellant's money in the purchase of bonds or other securities, which were found in its vaults and identified, and if appellant were now seeking to recover the securities so bought. For the reasons given, we are clearly of the opinion that appellant was entitled to priority of payment for the proceeds of the notes collected by the City Bank."

The court then took up the other branch of the case, and, in discussing it, used language which, dissociated from the first question, might tend to sustain the contention urged on behalf of appellees in this case.

We think it appears with reasonable certainty from the agreed facts in the case at bar that, from the time the Union Trust Company collected appellant's claim until the receiver was appointed and took possession, the collecting bank had in its possession more money than the amount collected upon appellant's claim, and therefore, under the doctrine announced and applied in the Weems Case, appellant's claim is entitled to preference.

Counsel for appellee undertakes to distinguish this from the Weems Case for the reason that the collecting bank in that case had but one place of business, and, when the collection there involved was made, the money was placed in the vault with other funds, while in the case at bar the collecting bank operated banks and transacted business at several different places in the state widely distant from each other; and the facts show that, when the receiver took possession, most of the money was at other places and there was not enough in the possession of the Union Trust Company at the place where this claim was collected to pay the entire claim. In other words, it seems to be contended either that these several places of business must be considered as if they be-

longed to separate and distinct owners or that the right to treat money found in possession of an insolvent collector as a substitute or equivalent for money collected and held in trust is dependent upon the fact that the money so collected was placed in the same vault with the money found on hand and taken possession of by the receiver. Neither of these propositions is regarded as sound. It is true that in the Weems Case the money collected was placed in the same vault with other funds belonging to the collecting bank; and it could not well have been otherwise, as that bank had only one place of business. But we do not understand or believe that it was the intention of the court to make the right of preference depend upon the fact that the money collected was actually and physically mingled with or placed in juxtaposition to other money belonging to the collecting bank. The true logic and doctrine of the Weems Case is that such collections as that involved in this case constitute a trust fund, and that, as long as the collecting bank keeps on hand as much or more than the amount of money so collected, the trust will attach to the funds so held by the collecting bank, although the identical money collected may have been paid out. And from this it follows that we hold that appellant's lien attached to all the money which went into the hands of the receiver, and that this would be true even if none of it had been found in the Union Trust Company's bank and place of business where appellant's claim was collected. Appellees' illustration of money deposited by one bank in another is not in point, because, when a general deposit is made, the money ceases to belong to the depositor and the transaction creates the relation of debtor and creditor.

For the reasons stated, that portion of the judgment of the trial court refusing a preference to appellant's claim is reversed and here rendered for appellant, requiring the receiver to pay said claim in full.

Reversed and rendered.