McKEON, Appellant, v. MEADE COUNTY BANK et al., Respondents.

(156 N. W. 795)

(File No. 3780.   Opinion filed March 13, 1916.)

1.  **Banks and Banking—Dealing in Warrants Through Bank Cashier, Then With Bank—Trust Fund With Bank—Preferred Creditor.**

    Where plaintiff arranged with the cashier of defendant bank for the purchase of county warrants and for the collection of warrants sent to him by plaintiff for that purpose, which collected warrants had been endorsed payable to order of the cashier, held, that, although most of the warrants purchased by the cashier were procured from the bank, and the bank knew that the cashier was purchasing for plaintiff, yet the arrangement entered into was between plaintiff and the cashier, and not between him and the bank, which had no connection with the arrangement, the proceeds of collections of all moneys received by the cashier from plaintiff being credited to the cashier's account. It further appeared that after this cashier was succeeded by another, plaintiff sent warrants for collection, which the bank collected, retaining the amount for the avowed purpose of purchasing warrants for plaintiff, and writing to plaintiff that it could furnish him warrants therefor, and would shortly report on the matter; it also issued to plaintiff a certificate of deposit for part of the sum so retained, and probably set aside for plaintiff said warrants for

the balance; that it collected for plaintiff certain warrants, and again wrote plaintiff, referring to his instructions as to holding the money for the purchase of more warrants, stating that it had already secured a certain amount, leaving a specified balance for further purchases. **Held**, further, that the proceeds of these collections held by the bank constituted a trust fund, and, the bank being in charge of the public examiner, plaintiff's claim thereto was entitled to preference over the claims of ordinary creditors.

2. **Same—Powers of State Bank—Ultra Vires—Purchase of Warrants for Investor.**

The purchase by a state bank of county warrants for an investor who furnished funds therefor, is within the powers of the bank, within the meaning of Civ. Code, Sec. 850, conferring on banks all powers necessary to carry on the business of banking, by discounting and negotiating promissory notes, bills of exchange, drafts, and other evidences of debt, by receiving deposits, buying and selling exchange, coin and bullion, and loaning money on personal, chattel and real estate security.

3. **Same—Claims Against Insolvent Bank—Presentation of Claim—Demand Before Suit, Necessity—Statute.**

Under Laws 1911, Ch. 256, Sec. 13, providing that a public examiner of banks in his hands shall publish notice calling on persons having claims against it to present same to him and make proof thereof at a specified place within a specified time, that if he doubts the justice and validity of the claim he may reject it, that an action upon a rejected claim must be brought within six months after notice by the examiner of its rejection, and that claims presented after expiration of time fixed in notice to creditors shall be entitled to share in the distribution only to the extent of the assets then in the hands of the public examiner equitably applicable thereto, **held**, that no demand before suit is required by said statute, and the bringing of the action should be treated as the presentation of the claim.

4. **Same—Insolvent State Bank—Trust Funds as Preferred Claim, Payment of—Payment of Deficiency, Pro Rata Share.**

Where a state bank, subsequently in the hands of the public examiner, received plaintiff's money for investment in county warrants, thereby making it a trust fund, **held**, that plaintiff is entitled to judgment for the amount of such moneys, and to have the amount adjudged a preferred claim, payable pro rata, with other unpaid similar claims on the funds on hand in the bank when taken over by the examiner, less sums properly paid out of said moneys prior to commencement of action, and, in case of deficiency, to share pro rata with other ordinary claims from funds applicable thereto in the hands of the ex-

aminer at time of commencement of action, or thereafter acquired by him.

Appeal from Circuit Court, Meade County. HON. FRANK B. SMITH, Judge.

Action by Thomas McKeon, against the Meade County Bank and another, to establish a preference claim against defendant insolvent bank. From a judgment dismissing the action, and from an order denying a new trial, plaintiff appeals. Reversed and remanded.

*Cull & Wood,* and *Gaffy & Stephens,* for Appellant.

*Spangler & Haney,* for Respondents.

(1) To point one of the opinion, Appellant cited: Knapp vs. Sanders, 15 S. D. 464; Bowers vs. Evans, 36 N. W., 629; Kimmel vs. Dickson, 5 S. D., 221; McLeod vs. Evans, 28 N. W., 173; Frances vs. Evans, 35 N. W., 93; Garley vs. Grans, 48 N. W., 110; Bank vs. Gas Co., 30 N. W., 440; Peak vs. Elliott, 1 Pac., 499; Van Allen vs. Bank, 53 N. Y., 1; Bank vs. Johnson, 69 N. W., 49; Gaiger vs. Hadley, 99 N. Y., 131; Wilson vs. Dawson, 52 Ind., 513; Strauss vs. Bank, (N. H.), 25 N. E., 372; Judy vs. Bangs, 84 Ky. 135; Plano Mfg. Co. v. Auld, 14 S. D. 512; Widman vs. Kellogg, 133 N. W., 1020; Stilson vs. First Nat'l Bank (Ia.) 129 N. W. 70; 5 Cyc. 515-514.

(2) To point two of the opinion, Respondents cited: Civ. Code, Sec. 850, Subd. 7; Bank v. Smith 77 Fed. 129; H. & M. Co., v. Yankton State Bank, 15 S. D. 196.

(3) To point three of the opinion, Appellant cited: First Nat'l Bank of Central City v. Himmel, 23 Pac., 986 (Colo.) Respondents cited: Laws 1911, Ch. 256, Sec. 13.

WHITING, J. The defendant Meade County Bank was a corporation doing a banking business in the city of Sturgis, Meade county, S. D., from prior to the year 1903 down to December 26, 1911. On this date the defendant Wingfield, as public examiner of this state, took charge of said bank, and has since remained in charge thereof. Early in the year 1903 an arrangement was entered into by and between plaintiff and one H. E. Perkins, then the cashier of defendant bank, under which arrangement Perkins, or else the defendant bank, was to purchase county warrants for plaintiff. From the month of June, 1903, down until the time when the public examiner took charge of defendant bank,

the plaintiff had, at divers times, forwarded large sums of money to the said Perkins, and had received from said Perkins at different times large amounts of warrants. The plaintiff had also, from time to time, returned warrants to said Perkins for the purpose of collection. The collection of such warrants was reported to plaintiff, sometimes cash being remitted, but more often the proceeds of the warrants being retained for the purchase of other warrants. All moneys remitted by the plaintiff were remitted by checks or drafts payable to Perkins. All warrants returned for collection were indorsed by plaintiff as payable to the order of Perkins. It is the contention of the plaintiff that the transactions had were between himself upon the one part and the Meade County Bank upon the other; that, inasmuch as the bank received these funds for the sole purpose of investment in a designated class of investments, the same became a trust fund; and that, for the balance of said fund remaining in the hands of the bank, the plaintiff is entitled to a preference as against the common creditors of said bank. It is for the purpose of establishing such preferential claim to something over $4,000 that this action was brought. The defendants' position was that the bank had no contractual relations whatsoever with the plaintiff; that such relations existed solely between plaintiff and Perkins; and that, therefore, any claim which the plaintiff may have is against Perkins. Trial was had before the court without a jury. Findings and conclusions were entered in favor of defendants, and upon them there was rendered a judgment, dismissing the said action. From such judgment and an order denying a new trial this appeal was taken.

(1) We have given most careful study, not only to the evidence as it appears condensed in the printed record herein, but also to it as it appears in the original settled record, which has been forwarded to and filed in this court; and, after such study of the evidence, we are clearly of the view that the trial court rightfully found the arrangement entered into to have been between the plaintiff and the said Perkins, and not between the plaintiff and the bank, though, without question, most, if not all, of the warrants purchased by Perkins for plaintiff were procured by Perkins of the bank, and the bank knew that Perkins was purchasing warrants for plaintiff. It would be impossible for us,

within the bounds of an opinion of ordinary length, to review fully the evidence received herein, and such a review could serve no useful purpose.

We are satisfied that, up to the spring of 1911, the transactions had were solely between plaintiff and Perkins. The last transaction, to which the bank was in no respect a party except as it acted for Perkins, was the collection of a lot of warrants, amounting to $992.36, which were collected and credited to Perkins' bank account on October 26, 1910, and appear on plaintiff's book under date of October 28, 1910. Upon this date, according to plaintiff's account, the correctness of which is not questioned, there was due plaintiff for moneys sent Perkins, and moneys collected by Perkins from warrants, the sum of $2,754.44 over the amount of plaintiff's money that had been used in purchase of warrants. After this time, Perkins wrote several letters, in which he either assured plaintiff that he already had procured, or was about to procure, warrants to send to him; but he never did sent any more warrants to plaintiff unless it was two small amounts received by plaintiff from some source after the failure of the bank.

In the spring of 1911, one Ladd succeeded Perkins as cashier of the bank. In the summer of 1911 Perkins made a trip to California. While he was gone the bank received some warrants forwarded by plaintiff for collection. Whether the letter inclosing such warrants was addressed to Perkins or to the bank does not appear. At this time the bank's books showed no credit in favor of plaintiff, because, as before noted, all moneys received from him by Perkins, either through remittances or through collection of warrants, had been credited to Perkins. The bank collected the amount due on these warrants, $719.54, and, instead of remitting this amount, retained the same for the avowed purpose of purchasing warrants for plaintiff. In their letter reporting this collection they said:

"We can furnish you warrants for the $719.54 which you now have and will make a report to you in a short time in regard to the matter, and it may be that we can get enough more so that it will be necessary to call upon you for additional funds."

Two things are clearly shown by this letter: (1) That the bank retained this $719.54 as a trust fund for a special purpose;

(2) that the bank had no other funds belonging to plaintiff. That the bank undertook to purchase warrants for plaintiff with this money, instead of crediting Perkins therewith and leaving the purchasing of warrants to be done by Perkins upon his return, appears further from the fact that this money was not credited to Perkins' account. Instead of turning this $719.54 over to Perkins, as had been the custom before, the bank issued a demand certificate of deposit in favor of plaintiff in the sum of $540.04, retaining the same in the bank. From the evidence we think it probable that the bank, at the same time, set aside for plaintiff a bunch of warrants for the balance, $170.50. On October 31, 1911, the bank collected a couple of warrants for plaintiff amounting to $1,259.78. In reporting this collection the bank wrote:

"We note what you say in regard to holding the money for the purchase of more warrants in the next thirty days and will state that we have already secured $281.32 leaving a balance of $978.46 for further purchases."

Again we find the bank, instead of crediting Perkins' account with any part of this collection, issuing to plaintiff a demand certificate for $978.46, the difference between the $1,259.78 collected and the $281.32 reported invested in warrants. It seems clear to us that the $719.54 and the $1,259.78, in all $1,979.32, collected and retained by the bank, became a trust found for which defendant bank should be holden. After the bank failed, plaintiff received from some source, not clearly disclosed by the evidence, $391.50 of warrants. Whether the credit therefor should be given to the bank or to Perkins remains to be determined by the trial court.

Defendants contend that, if plaintiff has any claim, it is but that of an ordinary creditor, and they cite McCormick H. M. Co. v. Yankton State Bank, 15 S. D. 196, 87 N. W. 974, in support thereof. The opinion therein has no application to the facts of this case. There the bank retained the money when, treating it as a trust fund, it should have remitted it. By allowing the bank to so retain money repeatedly, the plaintiff was held to have accepted the bank as a creditor. Here the retaining of the money by the bank was necessary to the carrying out of the trust assumed.

(2) Defendants contend that the purchase of warrants by the bank was an act wholly outside of the banking business.

If that were a material fact—a matter we express no view upon —yet we are of the opinion that the purchase of warrants is clearly warranted by section 850, C. C.

(3) Defendants also contend that plaintiff failed, before bringing suit, to make a proper demand under section 13, c. 256, Laws 1911. We find nothing in such section requiring any demand before suit. A claim was served practically simultaneous to the bringing of this action. We are inclined to think that the bringing of this action should be treated as the presenting of a claim.

(4) Plaintiff is entitled to judgment for $1,979.32, less such warrants, if any, which he received from the bank; and he is entitled to have the amount of such judgment adjudged a preferred claim payable pro rata with other unpaid preferred claims, and out of the moneys on hand in said bank when such bank was taken over by defendant Wingfield, less such sums, if any, that had been properly paid out of such moneys prior to the commencement of this action. If the sum applicable to the payment of preferred claims should be insufficient to pay plaintiff's claim in full, the balance should stand as an ordinary claim payable pro rata with other ordinary claims from funds applicable therefor remaining in the hands of defendant Wingfield at the time of the commencement of this action, or since acquired by him from the assets of the defendant bank. Plano Mfg. Co. v. Auld, 14 S. D. 512, 86 N. W. 21, 86 Am. St. Rep. 769.

The judgment is reversed, and the cause remitted to the trial court for further proceedings in comformity with this opinion. No costs shall be taxed in this court.