### ORMSBY v. FINNEY et al.

(District Court, S. D. Ohio, W. D. October 8, 1920.)

No. 165.

**Trusts ☞352—Estate of trustee, who mingled specific trust fund with his own funds, held chargeable only with original amount, with interest.**

Where decedent held a specific fund in trust to pay the income to his wife during her life, and on her death to distribute the principal among her children, but no distribution was made on the death of his wife, which preceded his own by two years, and there was no evidence as to what disposition he had made of the fund, his estate *held* chargeable only with the amount of the original fund, with interest from the date of his wife's death.

In Equity. Suit by George F. Ormsby against Joseph E. Finney and others. Decree for complainant.

Decree affirmed 281 Fed. 840.

John C. Rogers and Calvin Cramer, both of Cincinnati, Ohio, for complainant.

Miller & Finney, of Xenia, Ohio, Robert L. Black, of Cincinnati, Ohio, and Marcus Shoup and H. D. Smith, both of Xenia, Ohio, for defendants.

PECK, District Judge. Bill in equity to subject the estate of George S. Ormsby, deceased, to the terms of a trust. After the institution of this suit, it coming to the attention of the court by a motion and upon evidence that the complainant had, prior to the institution hereof, been adjudged insane, it was ordered that the action proceed in the name of John C. Rogers, his next friend. In 1868 George S. Ormsby became trustee of a fund of $1,598 under the will of Nancy W. Gray, deceased, of Essex county, Mass., and filed an inventory in the probate court thereof, admitting the receipt of that amount to be held in trust, to pay the income thereof to his wife, Caroline Ormsby, during her lifetime, and to distribute the principal to her children at her death. The complainant is one of her three children.

It is admitted by all defendants that George S. Ormsby filed no account of the condition of the estate in the probate court of Essex county at any time. In what manner he invested or managed the trust estate, and whether he did in fact pay the income to his wife or not, is unknown. His wife died in 1914. He died testate in 1916, leaving an estate of $22,000 of personal property, consisting of various items of investments, notes, and stocks, and some $1,400 in bank, and real estate valued at $7,650; the total appraisement of his assets being $30,183.33. Item 6 of the will is as follows:

"Item 6. In so far as I may have in my hands at the time of my decease any funds derived from or transferable to a trust fund created for my wife and children under the will of Nanvy W. Gray, deceased, I am disposing of the same by this will in the way that same would pass under the terms of the trust. The only persons now interested in the same being my three children to whom and for whose benefit I am bequeathing and devising in equal shares the residue of my estate which is much larger than such trust fund could possibly be claimed to be."

It is claimed that this is taken to be sufficient evidence of the existence of the trust at the time of his death, and that by this testamentary disposition he commingled, if he had not already done so theretofore, the trust estate with his own assets. To frustrate any attempt to obtain the trust estate as distinguished from his own property, he provided by item 27 that, if any of his heirs at law should undertake to hold him or his estate to account in any way as trustee of his wife's children, or either of them, under the will of Nancy W. Gray, deceased, such person should receive the sum of only $100 out of his estate. He was a man of moderate income, and it is not known how he accumulated his estate. Whether the trust fund was fortunately invested, so as to constitute a considerable portion thereof, if separated, is a matter of conjecture. By the remaining terms of his will he did not dispose of the estate in the same way, strictly speaking, that it would pass under the terms of the trust as stated in item 6, but made various minor dispositions of parts thereof, and created a trust fund as to so much of

the estate as was set apart for the benefit of complainant, who had theretofore been adjudged of unsound mind, creating certain rights therein in favor of the complainant's son.

Defendants offered evidence to show that the fund, at the time it was paid over to George S. Ormsby, was $1,598, as aforesaid, and aver complete ignorance as to what was done with it thereafter. There is no evidence of any specific act of commingling, as, for instance, the purchase of any certain stock or other property with commingled funds. It may be, for aught that is known, that any one of the items shown in the inventory does represent the trust estate. The income received from the trust estate is not here in issue, as that was payable to the trustee's wife during her lifetime, and her legal representatives are not here to assert any delinquency. The fund, then, is $1,598 plus any gains and minus any losses; but, as neither gains nor losses have been shown, it must be assumed that the fund was, at George S. Ormsby's death, as it was when he took it, $1,598.

The complainant contends that the entirety of George S. Ormsby's estate should be regarded as a trust fund, to be disposed of in accordance with the terms of the Nancy W. Gray trust. He relies principally upon National Bank v. Insurance Co., 104 U. S. 54, at page 67 (26 L. Ed. 693), where the court say:

"Vice Chancellor Sir W. Page Wood, in Frith v. Cartland, 2 Hem. & M. 417, 420, said that Pennell v. Deffell rested upon and illustrated two established doctrines. One was, that 'so long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust'; the second is, 'that if a man mixes trust funds with his own, the whole will be treated as the trust property, except so far as he may be able to distinguish what is his own.'"

It is upon the second proposition therein quoted complainant bases his contention that the entirety of George S. Ormsby's estate must be considered as subject to the Nancy W. Gray trust and so distributed. No application of the language quoted was required to be made or was made in that case. The action there was by an insurance company against a national bank for the deposit account of its agent therein kept. The bank was charged with knowledge of the character of the account. It, however, claimed a lien upon, and undertook to appropriate, the account in payment of a note which the agent individually owed to it. This note represented money used by the agent individually in stock speculation, with the knowledge of the bank. The bank claimed not to know the insurance company with regard to the deposit account, and that the same was a simple debt from it to its depositor. It clearly appeared that the agent's balance in bank was less than his debt to the insurance company, and consisted entirely of the proceeds of collections of premiums made by him as the company's agent. 104 U. S. 56, 26 L. Ed. 693. It was held that the insurance company was entitled to follow the fund.

The true rule applicable to this case seems to be that stated by Sir George Jessel, in Re Hallett's Estate, 13 Ch. D. 696, referred to by the Supreme Court (104 U. S. at page 68, 26 L. Ed. 693), in National Bank v. Insurance Co., supra, as follows:

"The Master of the Rolls, Sir George Jessel, showed that the modern doctrine of equity, as regards property disposed of by persons in a fiduciary position, is that, whether the disposition of it be rightful or wrongful, the beneficial owner is entitled to the proceeds, whatever be their form, provided only he can identify them. If they cannot be identified by reason of the trust money being mingled with that of the trustee, then the cestui que trust is entitled to a charge upon the new investment to the extent of the trust money traceable into it. * · *  * "

The application of the doctrine that a cestui que trust takes the entirety of the commingled fund, if the trustee cannot distinguish his own, seems to have been limited to those cases in which the trust fund has been traced into some specific investment or transaction, and where the amount of the fund was unknown. Indeed, the only actual application of the rule, though statements of it in the texts are frequent, cited, is Tufts v. Latshaw, 172 Mo. 359, 72 S. W. 679, where a surviving partner had, in carrying on the business, used some undetermined amount of his own money, and where all was held to be partnership property. The rule applicable under the present state of facts seems to be that last quoted from National Bank v. Insurance Co. Holder v. Western German Bank, 136 Fed. 90, 92, 68 C. C. A. 554; Smith v. Township of Au Gres, 150 Fed. 257, 80 C. C. A. 145, 9 L. R. A. (N. S.) 876; Re Hallett's Estate, supra; Bohle v. Hasselbroch, 64 N. J. Eq. 334, 51 Atl. 508, 61 L. R. A. 323; Erie R. Co. v. Dial, 140 Fed. 689, 72 C. C. A. 183; In re Bolognesi & Co., 254 Fed. 770, 772, 166 C. C. A. 216.

The case closest to the present one in point of fact that has been found is Alexander v. Fidelity Trust Co., 249 Fed. 1, 161 C. C. A. 61 (C. C. A. 3). It was there held that the trustee could not discharge his trust by a will similar to that now in evidence, and the rule that the burden is upon the representative of the trustee to show clearly what part of the property belongs to his estate was stated by the district judge in the unreported opinion then under review. 249 Fed. 11, 161 C. C. A. 71. But it appears that the amount of the trust was not, on appeal, in controversy (249 Fed. 9, 161 C. C. A. 69), and therefore the question here present did not arise. Here either the amount of the original trust fund must be taken as evidence of the extent of the trust at the date of the trustee's death, or his entire property, 20 times as great in value, must be deemed to be the trust estate. The former appears to be the more equitable rule, under the circumstances.

The original amount of this trust fund having been $1,598, and the complainant having no right to the income thereof during the life of Caroline Ormsby, and there being neither evidence nor presumption that the corpus of fund was increased by gains or profits, it is found that the trust fund at Mrs. Ormsby's death amounted to that sum. Therefore the estate of George S. Ormsby, deceased, will be decreed to be subject to an equitable lien in favor of the complainant to the extent of one-third of $1,598, with interest at 6 per cent. per annum, payable annually, from the date of the death of Caroline Ormsby, less the sum of $50 heretofore paid him under a former order of this court; and the decree will order the sum so found to be paid to John C. Rogers, complainant's next friend, for the use and benefit of complainant.

The defendant Richard Hurst was the purchaser at sheriff's sale 'of certain property which George S. Ormsby, deceased, had conveyed by deed of general warranty, in consideration of $1 and other considerations, to his daughter, Helen Martha Ormsby, against whom a suit was filed by the Ideal Concrete Machinery Company in the Greene county court of common pleas upon a judgment seeking to enforce its lien, and for a marshaling of the liens of the other lienors. No complaint is made of the regularity of the sale. By his will said George S. Ormsby charged against the said Helen Ormsby, not upon this property, however, but upon a certain bequest 'of $2,000 to her therein made, $400 in favor of the fund created for the benefit of George F. Ormsby, and $400 in favor of his other daughter, Caroline W. Burns, saying, "This four hundred dollars ($400.00) paid to each represents one-third the value of the homestead place," the property in question; "each heir at law properly claiming a one-third interest in the homestead which I have valued at twelve hundred dollars ($1,200.00)." While the gift of the homestead was thus treated as an advancement, and the other two children made equal by the provision in question, no lien was reserved thereon, and in no view of the case has the complainant any interest therein.

The bill as against the defendant Hurst will be dismissed, with costs, and he may take a decree quieting his title. The executors will pay the costs of this proceeding.