# Richmond.

## Federal Reserve Bank of Richmond
## v. Bohannan, Receiver.

### March 19, 1925.

Case submitted for decision before Judge Kelly qualified.

1. Banks and Banking—*Collecting Bank—Relation of Debtor and Creditor—Relation of Principal and Agent—Case at Bar.*—The Federal Reserve Bank of Richmond had an agreement with the Bank of Disputanta, not a member of the Federal Reserve System, by which checks drawn upon the Bank of Disputanta received by the Federal Reserve Bank from its member banks should be sent to the Bank of Disputanta in the course of mail and the Bank of Disputanta agreed after examining these checks either to return them unpaid and properly protested or else if it desired to pay them, to immediately remit the amount thereof. The remittance could either be made by shipment of coin or currency, at the expense of the Federal Reserve Bank, or by means of a draft drawn by the Bank of Disputanta against funds on deposit to its credit with some bank satisfactory to the Federal Reserve Bank.

   *Held:* That the relations of the Federal Reserve Bank and the Bank of Disputanta were those of principal and agent, and not of debtor and creditor; that the Federal Reserve Bank had a lien on the cash in the vaults of the debtor bank; and that this lien was not released by a remittance draft which was not paid. See *Federal Reserve Bank v. Peters,* 139 Va. 45.

2. Banks and Banking—*Collecting Bank—Action by Collecting Bank in Its Own Name—Case at Bar.*—In the instant case the Federal Reserve Bank of Richmond had an agreement with the Bank of Disputanta by which checks received by the Federal Reserve Bank from its member banks drawn on the Bank of Disputanta should be forwarded by it to the Bank of Disputanta for payment or protest. It was suggested that the Federal Reserve Bank was the agent of other undisclosed persons or banks to collect the checks and could not maintain a suit in its own name for their collection against the Bank of Disputanta or its receiver.

*Held:* That after the Bank of Disputanta contracted with the Federal Reserve Bank to pay these checks to it it was bound by its contract, and the action could lie against it or its receiver.

3. Appeal and Error—*Objection for the First Time on Appeal—Objection that Agent for an Undisclosed Principal Could not Sue in His Own Name.*—In a proceeding by a Federal Reserve Bank against the receiver of an insolvent bank to collect checks drawn on the insolvent bank, it was objected that the Federal Reserve Bank was an agent of other undisclosed persons or banks and could not maintain a suit in its own name for collection of the checks. No such objection was made when the checks were presented for payment nor in the trial court and it could not be made for the first time on appeal.

4. Parties—*Agency—Undisclosed Principal.*—An agent may sue in his own name upon a contract made with him for an undisclosed principal.

5. Bills, Notes and Checks—*Restrictive Indorsee—Action by Restrictive Indorsee.*—Under section 5599 of the Code of 1919, a restrictive endorsee may receive payment of the instrument, and may bring any action thereon that the endorser could bring. A bank therefore which has paid checks drawn on another bank in accordance with an agreement with that bank can sue the receiver of such bank in its own name.

6. Banks and Banking—*Collecting Bank—Payment—Check not Payment until it is Paid.*—An insolvent bank had an agreement with the Federal Reserve Bank of Richmond under which the Federal Reserve Bank was to pay checks drawn upon the insolvent bank received from its member banks and forward them to the insolvent bank. The insolvent bank agreed to return such checks properly protested or if it desired to pay them to remit by coin or currency, or by draft on an approved bank.

*Held:* That the drawing of a draft on a third bank by the insolvent bank to the order of the Federal Reserve Bank of Richmond and mailing the same in no way affected the relation of principal and agent between the banks, where the draft was not paid, and did not constitute a waiver of the general lien of the Federal Reserve Bank on the cash in the vaults in the insolvent bank.

Appeal from a decree of the Circuit Court of Prince George county.    Decree for defendant.    Plaintiff appeals.

*Reversed.*

The opinion states the case.

*M. G. Wallace,* for the appellant.

*J. Gordon Bohannan,* for the appellee.

BURKS, J., delivered the opinion of the court.

This case is here upon an agreed statement of facts of which appellant, in his petition for appeal, makes the following summary, the accuracy of which is not called in question:

"Your petitioner was and is a Federal Reserve Bank created by and having the powers set forth in a certain act of Congress known as the Federal Reserve act (U. S. Comp. St. Ann. Supp. 1923, §9745a) and having its principal place of business in the city of Richmond, Va. The Bank of Disputanta was a banking corporation organized under and in pursuance of the statutes of the State of Virginia applicable to banks, but was not a member bank of the Federal Reserve System; and, therefore, maintained no reserve account with your petitioners. In the course of its business your petitioner received from its member banks and other depositors checks drawn upon the Bank of Disputanta. In order that these checks might be collected your petitioner had made with the Bank of Disputanta an agreement, under which checks on the Bank of Disputanta could be sent by your petitioner to it in the course of mail, and the Bank of Disputanta agreed, after examining these checks, either to return them unpaid and properly protested, or else, if it desired to pay them, to immediately remit the amount thereof. The said remittance could either be made by shipment of coin or currency, at the expense of your petitioner, or by means of a draft drawn by the Bank of Disputanta against funds on deposit to its credit with some bank located in Richmond, Va., Petersburg, Va., or some other place satisfactory to your petitioner.

"On the 20th day of January, 1922, your petitioner sent to the Bank of Disputanta checks drawn upon that bank amounting to $1,416.25. The Bank of Disputanta received these checks on or about January 21, 1922, and upon that date cancelled them, charged them to the account of the drawers, and in order to remit the amount of the said checks drew a certain draft upon the Virginia National Bank of Petersburg. This draft was sent to your petitioner, received by it on January 23rd, and immediately sent by your petitioner to the Virginia National Bank, which was a member of the Federal Reserve System, with the request that the amount thereof be paid and credited to your petitioner. On January 23, 1922, upon the petition of the State Corporation Commission, the Circuit Court of Prince George county appointed J. Gordon Bohannan receiver for the Bank of Disputanta, and such receiver immediately qualified and took possession of all the assets of the failed bank. It appeared at that time that the Bank of Disputanta was insolvent. The Virginia National Bank of Petersburg, Va., accordingly, refused payment of the draft drawn by the Bank of Disputanta.

"At the time that the said checks upon the Bank of Disputanta were collected by it and charged to the accounts of the several drawers, the Bank of Disputanta had on hand a sum in money *on* currency sufficient to pay the checks, and at the time that the receiver took charge he found in the vault of the Bank of Disputanta money and currency to the sum of $1,477.66.

"At the time that the remittance draft was presented to the Virginia National Bank of Petersburg, there was to the credit of the Bank of Disputanta, with the Virginia National Bank of Petersburg, an apparent balance of $7,340.41, but the Virginia National Bank held a note made by the Bank of Disputanta for $25,000.00, and

held collateral securing the said note to the amount of $52,199.63. The said note was not due, but after the appointment of a receiver for the Bank of Disputanta the Virginia National Bank credited the above mentioned deposit balance upon the said note for $25,000.00.

"At the time this case was heard in the court below the Virginia National Bank had not collected upon the said collateral pledge for the said $25,000.00 note a sum sufficient to discharge the balance due upon the said note, but it appeared probable that, after the claim of the Virginia National Bank of Petersburg was fully satisfied, a substantial amount of such collateral would remain in the hands of the bank subject to the order of the court.

"The cause was referred to W. D. Temple, Esq., a commissioner in chancery for the Circuit Court of Prince George county. Your petitioner duly appeared before the said commissioner and offered evidence in support of its claim and also presented to the said commissioner a petition, which is copied in the record.

"The said commissioner reported that the assets of the Bank of Disputanta in the hands of the receiver were impressed with a trust in favor of your petitioner, and that the claim of your petitioner should, therefore, be paid in full out of the money in the hands of the receiver. The receiver in due time filed exceptions to this report, and the matter was argued before the Honorable M. R. Peterson, judge of the Circuit Court of Prince George county. After hearing argument and considering the evidence, the honorable court sustained the exceptions to the report, and, by its order entered on December 22, 1922, decreed that the exceptions filed by the receiver be sustained, and that the claim of your petitioner be established as a claim of a general creditor."

In the petition referred to in the foregoing summary, the appellant, for reasons set forth in the petition, but which need not be here stated, asks that its claim of $1,416.25 be credited by $20.30, thus leaving the balance of its claim $1,395.95.

The appellant claims that the trial court erred in the following particulars:

"(1) In denying the claim of your petitioner to a lien upon the cash which was in the vault of the Bank of Disputanta at the time that the receiver took charge and in refusing to direct that so much of the said cash as was necessary to pay in full the claim of your petitioner should be paid over to it.

"(2) In denying the claim of your petitioner to a lien upon the deposit balance of the Bank of Disputanta in the Virginia National Bank of Petersburg, and in refusing to direct the receiver to hold for your petitioner and to pay over to it any money which might be collected by him from the said Virginia National Bank of Petersburg, Va., upon a final settlement or from the collateral in the hands of the said Virginia National Bank of Petersburg."

. [1] The case of *Federal Reserve Bank of Richmond* v. *Peters, Receiver of Prince Edward-Lunenburg County Bank*, 139 Va. 45, 123 S. E. 379, received very careful consideration, and the conclusions therein were reached only after a careful review of the authorities. We are satisfied with those conclusions and it would be a work of supererogation to repeat the reasons and the arguments by which they were reached.  That case and the instant case are "on all fours" in nearly every particular.  That case determined that the relations of the Federal Reserve Bank and the debtor bank were those of principal and agent, and not of debtor and creditor; that the Federal Reserve Bank had a lien on the cash in

the vaults of the debtor bank at the time of its insolvency, and that this lien was not released by the remittance draft which was not paid.

[2-5] It is suggested by counsel for the appellee, rather than asserted, that the Federal Reserve Bank was the agent of other undisclosed persons or banks to collect the checks in question and could not maintain a suit in its own name for their collection. The Bank of Disputanta had contracted with the Federal Reserve Bank to pay these checks to it and it is bound by its contract. Furthermore, no such objection was made when the checks were presented for payment, nor in the trial court, and it cannot be made here for the first time. But even if it could be, it would be unavailing, as an agent may sue in his own name upon a contract made with him for an undisclosed principal (*National Bank* v. *Nolting*, 94 Va. 263, 26 S. E. 826), and, under section 5500 of the Code, a restrictive endorsee may receive payment of the instrument and may bring any action thereon that the endorser could bring.

[6] Counsel for the appellee insists that the drawing of the draft on the Virginia National Bank localized and specialized the lien of the Federal Reserve Bank and was a waiver of the general lien on the cash in the vaults of the Bank of Disputanta; citing *In re City Bank of Dowagiac* (D. C.) 186 Fed. 250. He overlooks the fact that in the *Prince Edward-Lunenburg County Case* it was held that "a check is not a payment until the check is paid, and the drawing of a check by the Prince Edward-Lunenburg County Bank to the order of the Federal Reserve Bank of Richmond, and mailing the same to the last mentioned bank, in no way affected the trust already impressed."

Other authorities are to the same effect.

In *Holder* v. *Western German Bank*, 68 C. C. A. 554,

136 Fed. 90, it is said: "The Florida bank was an agent in making the collection. When it had made the collection, it held it in trust. If it mingled it with its own funds, the trust attached *pro tanto* to the funds. *National Bank* v. *Insurance Co.*, 104 U. S. 54, 26 L. Ed. 693, where the principle vindicated in *Knatchbull* v. *Hallett*, 13 Ch. Div. 696, by Sir George Jessel, M. R., is fully confirmed. When it sent its own draft as the remittance, it did not operate as a satisfaction of its obligation unless the draft should be paid, there being no agreement to receive the draft as payment. This would be so in the case of a common debt. And certainly the reasons for the same rule are not less where an agent transmits to his principal his own note or draft to provide means for the satisfaction of a trust obligation on account of funds received for his principal. The facts show that the draft of the Florida bank was uncollectible, that the payment of it was forbidden by the receiver, the party upon whom the right of the bank had been devolved. The trust relation between the plaintiff and the Florida bank was not discharged by such a remittance, and the collection went into the hands of the receiver subject to the trust. If the remittance of the draft were to be regarded as provisional payment, the result would be that, in case the draft should not be paid, the parties would be remitted to their former position. In such a case there would be no sound reason, as we think, for holding that the debt had lost its privileged character by a proceeding of the party owing it, unless the party to whom the debt is owing expressly assents to the change of relation between himself and his agent. The bank could not rid itself of that relation and become the mere debtor of the plaintiff by its own act. The trust was part of the plaintiff's security. Neither the plaintiff nor the Western German Bank, in

his behalf, ever consented that the Florida bank should cast off the trust and become the plaintiff's debtor.    It would be a most absurd consequence if a man in the possession, as an agent, of a fund belonging to another, could convert the fund into his own property by sending his check to the owner, and then, upon some change in his own circumstances, direct his bank not to pay it, and so transform himself into a debtor.    Of course, if the owner consents to such a change of relationship between himself and his agent, or where the circumstances indicate that a credit in account is expected, which is the same thing, the result is different, because the destination of the fund is altered by agreement.    But here there was no such agreement.    The check was sent for collection and remittance.    Satisfactory proof should be required that the owner assented to such change, in view of the consequences which would ensue.    A man might be quite willing to trust another with the collection of his money when he would be very unwilling to loan it to him.    It would seriously impair the facilities for collecting commercial paper if it should be exposed to the hazards of conversion by the agent into whose hands the proceeds might come."

In *Western German Bank* v. *Norvell*, 69 C. C. A. 330, 134 Fed. 724, it was held that "when a bank, known by its officers to be insolvent, collects money for a customer and mingles the same with its own funds, which to an amount larger than the sum so received go into the hands of its receiver, it is not essential to the right of the customer to recover from the receiver that he should be able to trace the identical money into the receiver's hands; but it is sufficient to show that the sum which went into the receiver's hands was increased by the amount so collected."

In *Spokane & E. Trust Co.* v. *United States S. & P. Co.*

(C. C. A., 9th Cir.), 290 Fed. 884, 886, it is said: "Looking to the question whether the Central bank ever had title to the hardware company's check, sent to it by the Seattle bank, we are of the opinion that the writings between the remitting bank and the collecting bank at Yakima not only fail to disclose consent to any relationship of debtor and creditor, but affirmatively show that the relationship became one whereby the collecting bank was a trustee of the proceeds collected. We are also of the opinion that the Central bank, at the time that it acted in the matter of collection, was insolvent and not in a position to become a debtor of the steel company. The rule as established by the weight of authority is that where a bank transmits negotiable paper for collection and return, the bank which receives the check and undertakes the collection is the agent of the principal, and becomes a trustee of the proceeds for the owner, and, except where consent is given, the collecting bank cannot avoid such relationship and create that of mere debtor and creditor. Among many cases where the rule is clearly stated are: *Holder* v. *Western German Bank,* 136 Fed. 90, 66 C. C. A. 554; *Continental Nat. Bank* v. *Weems,* 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85; *Nat. Reserve Bank* v. *Nat. Bank,* 172 N. Y. 102, 64 N. E. 799; *Titlow* v. *McCormick,* 236 Fed. 209, 149 C. C. A. 399."

The holding in *Holder* v. *Western German Bank, supra,* is approved in *Smith* v. *Township,* 80 C. C. A. 145, 150 Fed. 257, 260, 9 L. R. A. (N. S.) 876; *Erie R. Co.* v. *Dial,* 72 C. C. A. 183, 140 Fed. 689, 691; *Ormsby* v. *Finney* (D. C.), 281 Fed. 836, 839, and in other cases. See also *People* v. *Dansville Bank,* 39 Hun (N. Y.) 187; *People* v. *Merchants' Bank,* 92 Hun 159, 36 N. Y. S. 989.

Several of these cases are also authority for the proposition that the authorization or direction to remit by

New York exchange does not change the position of the collecting bank from that of trustee to that of debtor. If the holding in *In re City Bank of Dowagiac* can be said to be in conflict with the cases cited, we cannot follow it.

In the instant case the exchange draft was drawn on funds on which there was a preferred lien which was enforced, thus leaving nothing with which to pay said draft.

The decree complained of will be reversed, and a judgment will be entered in this court in favor of the Federal Reserve Bank of Richmond, Va., against J. Gordon Bohannan, receiver of the Bank of Disputanta, for the sum of $1,395.95, with interest thereon at six per cent per annum from January 23, 1922, until payment, and for its costs.

*Reversed.*