J. F. Noll, Trustee, Appellant, v. Harrison County Bank et al., Respondents.*

Kansas City Court of Appeals.   November 26, 1928.

*Corpus Juris-Cyc References: Banks and Banking, 7CJ, section 301, p. 625, n. 76.

*Randall Wilson* for appellant.

*L. M. Hyde* for respondents.

FRANK, C.—This action by J. F. Noll, plaintiff, appellant here, seeks to establish, as preferred, a claim in the sum of $400 against the Harrison County Bank, in the hands of the Commissioner of Finance, and in process of liquidation. The trial court denied a preference but allowed the demand as a general claim. Plaintiff appealed.

The facts disclosed are that the Harrison County Bank was a banking corporation transacting a general banking business in Bethany, Missouri, up to April, 1927.

Presumably much of the paper held by the bank was not considered good. On May 4, 1926, the board of directors by resolution removed from the assets of the bank, notes aggregating $102,813.79, by charging said amount out of the surplus account of the bank. The surplus was not sufficient to match the $102,813.79 which was charged against it. In order to supply the deficiency in the surplus, the board of directors by resolution raised the valuation of the bank building $7000 and sold the notes which had been charged out of the

surplus, to the directors for $20,000 and deposited said $20,000 to the surplus account.

Plaintiff was a member of the board of directors. The entire board of directors, including plaintiff, borrowed the $20,000 with which they purchased said notes, from one Robert H. Dunn, and executed their joint promissory note therefor. After borrowing the $20,000 all members of the board executed a written agreement reciting that they accepted and agreed to hold the $102,813.79, worth of notes which they had purchased from the bank, in trust for the following purposes.

"To collect said notes and secure the same as best we can and as collected to apply the proceeds toward the payment of a note for $20,000 which we have jointly given to Robert H. Dunn for the sum due one year after date with interest at five per cent per annum and as said notes are collected they shall be applied to pay the above note and interest thereon and the balance of the proceeds of said notes shall be returned to the Harrison County Bank and be credited to the undivided profits account of said bank.

"It is agreed and understood that all future dividends of the Harrison County Bank shall be applied toward the payment of the Dunn note and interest and any notes given in renewal of same.

"We hereby select Joseph F. Noll as trustee to receive, renew and collect said notes and dispose of the proceeds thereof as above provided."

This agreement selects plaintiff, J. F. Noll, as trustee to represent the directors and handle the notes purchased by them in the manner provided in said agreement.

After the directors had borrowed the $20,000, and executed the agreement, which appointed plaintiff as trustee to handle the matter for the board, plaintiff deposited the $20,000 in said bank in the name of J. F. Noll, trustee, and immediately wrote a check against said account for $19,163.79, payable to the Harrison County Bank. This check was cashed and the proceeds thereof deposited in the surplus fund of the bank, thus raising said fund to an amount sufficient to meet the amount of the notes that had been charged out of said fund, leaving in plaintiff's trustee account the sum of $836.21. Among the notes charged out of the surplus fund and sold to the directors, was one for the principal sum of $5000, executed by one Chris Van Hoozer.

Van Hoozer, not knowing that his note had been sold to the directors, and believing that it was still owned and held by the bank, went to the bank for the purpose of paying the interest on said note. He borrowed $400 from the bank, deposited the $400 in said bank in his own name, then wrote a check against said account for $400 payable to the bank and delivered the check to the cashier of the

bank in payment of the interest due on his said note. The cashier charged the amount of the check against Van Hoozer's account and deposited and credited it to the account of plaintiff as trustee. Aftter these transactions the bank was placed in the hands of the Commissioner of Finance, and is in progress of liquidation. Plaintiff did not know the interest had been paid on the Van Hoozer note and credited to his account until after the bank had ceased to function

Other facts necessary to a determination of the points raised, will be stated in course of the opinion.

On the record thus presented, appellant contends that the court erred in refusing to allow the $400 interest paid on the Van Hoozer note as a preferred claim against the bank, while respondent makes the contrary contention.

The question to be determined is whether or not the placing of the $400 on deposit in the bank to the credit of plaintiff, as trustee, under the circumstances shown here, created a relation of trust or of debtor and creditor between plaintiff and the bank. If the relation is one of trust, plaintiff is entitled to a preferred claim. Otherwise not.

The evidence is undisputed that the directors purchased the Van Hoozer note, along with other notes, and thereafter executed a trust agreement, which recited, among other things, that plaintiff was selected as trustee to collect these notes and disburse the amount collected in the manner set out in said trust agreement. This trust agreement was made on April 27, 1927. The notes mentioned in the trust agreement were delivered to plaintiff, and he placed them in a lock box in the bank. Plaintiff was sick and went to Texas for the benefit of his health in January, 1927, and did not return until after the bank closed. There is no evidence that plaintiff ever authorized the cashier of the bank to collect these notes or the interest thereon and deposit the amount collected in the bank to the credit of plaintiff as trustee. Respondent, however contends that the board of directors authorized him so to do. The evidence touching this point is that of the cashier, which is as follows:

"Q. Now did you ever have any conversation with Mr. Noll about how these collections were to be made on these notes? A. I don't know as I ever did, no, outside of the board meetings, don't think any private conversations with Joe.

"Q. Was it discussed in the board meetings? A. Yes, sir, it was discussed.

"Q. Tell what was said in the board meeting. A. Nothing said in the board meetings while he was present, taking any authority from Mr. Noll, because he was in charge.

"Q. Tell what was said about these notes in the board meeting. A. It was talked to have the notes collected and applied, as soon as possible applied on the note they owed Mr. Robert Dunn.

"Q. Was anything said about you collecting them? A. Not until after Mr. Noll went south for his health.

"BY MR. WILSON: We move to strike that out, for the reason it is shown by answer of the witness he was not present.

"BY THE COURT: Yes, that wouldn't be competent, anything said after Noll was gone.

"Q. Did Mr. Noll have a special box in the bank for these trustee notes? A. He did.

"Q. Who had the keys? A. He had the keys until he went south and they were sent to me.

"BY THE COURT: Who sent them to you?

"A. His brother, J. E. Noll brought them from the hospital and gave them to me, yes, sir.

"BY MR. WILSON: Do you know that Mr. J. F. Noll sent them to you, or whether just Mr. J. E. Noll brought them to you?

"A. I don't think I could answer that—J. E. Noll brought them to me."

Respondent contends that because the key to the lock box containing the notes was delivered to him, and because the board of directors was insisting that the notes be collected as soon as possible, the cashier was authorized to collect the interest in question and deposit to the credit of plaintiff.

The evidence is that there was nothing said at the board meetings where plaintiff was present, taking any authority from plaintiff, and nothing said about the cashier collecting the notes, until after plaintiff went to Texas. The cashier testifies to what was said at the board meeting, as follows:

"Q. Tell what was said about these notes in the board meeting. A. It was talked to have the notes collected and applied, as soon as possible applied on the note they owed Mr. Robert Dunn."

It is not shown whether this talk at the board meeting was before or after plaintiff went to Texas. Viewing this evidence in the light most favorable to respondent, it did not authorize the cashier to deposit the amount collected to plaintiff's credit. The talk at the board meeting was to *apply the amount collected on the note which the board owed Robert Dunn, as soon as possible*. The cashier did not follow these directions and apply the amount collected on the Dunn note, but on the contrary placed the $400 on deposit on January 11, 1927, and left it there until the bank failed in April, 1927. The most favorable inference that could be drawn in respondent's favor, from the cashier's possession of the key to plaintiff's lock box which contained the notes, was given him access to the notes in

event he had opportunity to collect one of them or receive a payment thereon. His possession of the key does not tend to show what he should do with the money after he collected it. On the contrary, the directions from the board of directors, upon which respondent relies to justify the conduct of the cashier, was to apply the amount collected on the Dunn note *as soon as possible*. This he did not do. The cashier was asked on cross-examination, why he deposited the $400 to the credit of plaintiff. His answer was,

"I had a chance to get the interest on that note and get it secured, which I did, and after he paid me the $400 there was only one place to put it, the note didn't belong to the bank, and I deposited the $400 to Mr. J. F. Noll's account, which is a method of business in banking."

This answer does not show that the cashier deposited the $400 to plaintiff's credit because he was authorized to do so, but because it was a method of business in banking.

Under any view of the evidence the act of the cashier in depositing the $400 in the bank and leaving it there for a period of three months until the bank failed was unauthorized.

It is true that the relation between a general depositor and the bank is one of debtor and creditor, but such a relation cannot be created by the unauthorized act of one party but must be created, if at all, by the acts and conduct of both parties, indicating their intention to create such a relation.. The voluntary, wrongful and unauthorized act of the cashier in placing the $400 on deposit to the credit of plaintiff cannot force him to accept a relation with the bank that he never intended to create, or change the relation that was actually created by the intention of both parties as evidenced by their conduct. [Evans v. People's Bank, 6 S. W. (2d) 655, 656.]

The note in question did not belong to the bank, and plaintiff never intended that the proceeds thereof should be used by the bank in the usual course of its business. Construing the evidence in a light most favorable to respondent, the most that can be said is that the note was left at the bank with specific instructions to collect it, and *as soon as possible*, apply the proceeds as a payment on the Dunn note which plaintiff and the other directors owned. The law as declared by the Supreme Court in Federal Reserve Bank v. Millspaugh, 282 S. W. 706, is controlling here. At page 709 of that case, the court said:

"Where a note, a check, or a draft is forwarded by one bank to another, bearing a restrictive indorsement 'for collection and a remittance,' under directions to collect and forward the proceeds to the sender, the relation of principal and agent is created and not

that of debtor and creditor. The funds thus collected are held to constitute a trust fund and entitled to a preference over the claims of general creditors. When the relation existing between two banks, as in the case at bar, is that of principal and agent, the funds collected by the collecting bank for the forwarding bank become impressed with a trust in favor of the owner of the item collected. This is true, although the item collected be one drawn on the collecting bank, and it is collected by charging the item against the drawer's account, or if it be an item payable at the collecting bank and it is collected by a check drawn on it. The trust in either case follows the funds into the hands of the receiver—in this instance, the finance commissioner—although the collecting bank may fail before remitting the proceeds collected, provided the following conditions exist: (1) That the item was forwarded for collection and remittance of the collected proceeds; (2) that the drawer of the check had a sufficient balance with the collecting bank to authorize the charging of the item to his account; (3) that at the time the charge was made the collecting bank had sufficient funds available to honor the check; (4) that the bank which failed had at the time the receiver took charge of same sufficient funds on hand to pay the amount it had collected. [Mid. Nat. Bank v. Brightwell, 49 S. W. 994, 148 Mo. 358, 71 Am. St. Rep. 608; First Nat. Bank v. Sanford, 62 Mo. App. 394; Harrison v. Smith, 83 Mo. 210, 53 Am. Rep. 571; Federal Reserve Bank v. Bohannan, Receiver, 127 S. E. 161, 141 Va. 285; 2 Morse on Banking (5 Ed.), 567, p. 227, and cases cited in notes.]''

Respondent contends that the Millspaugh case, supra, and kindred cases, are not in point here because in those cases, the collecting bank had specific instructions to remit, thus creating an agency, while in the case at bar, the evidence simply shows a transfer of credit from one creditor to another.

We do not agree with this contention. We have already pointed out that the evidence in this case shows that the notes were left at the bank with specific instructions to apply all money collected as a payment on the Dunn note *as soon as possible.* If specific instructions to collect and remit, creates an agency, specific instructions to collect and apply the amount collected to a specific purpose, likewise creates an agency.

Respondent contends that in no event would plaintiff be entitled to a preference because the assets of the bank were not increased.

This contention is based on the proposition that when Van Hoozer gave a check on his account for $400, the cashier charged the check to Van Hoozer's account and credited plaintiff's account with $400. From these facts, it is argued that the bank received no money by the transaction, but simply transferred a $400 credit from one

account to another, and for that reason the assets of the bank were not increased. While it is true that there was no more money in the bank's possession after the transaction, than there was before, but if leaving the note at the bank with instructions to collect it and apply the proceeds to a specific purpose, created the relation of principal and agent, the relation thus created cannot be destroyed by the voluntary and wrongful act of the cashier in commingling the funds collected with the funds of the bank, the effect of which was to increase the assets of the bank by adding thereto funds which belonged to plaintiff and not the bank. Plaintiff's title to the $400 interest collected on his own note cannot be destroyed by the unauthorized act of the cashier in mingling it with the funds of the bank. The fact that the check was drawn on the collecting bank does not alter the situation. [Federal Reserve Bank v. Millspaugh, 282 S. W. 706, 709.]

Bank v. Brightwell, 148 Mo. 358, cited by respondent in support of its contention that the mere transfer of a bank's liabilities from one creditor to another does not increase the assets of the bank, is not in point here, because it was decided on a state of facts entirely different from the facts here presented. In that case it appeared that items were sent to the Slated Savings Bank for collection, by Midland National Bank. The Slater Savings Bank collected these items by charging the accounts of depositors who owed the items, and crediting the Midland National Bank therewith. The agreed facts in that case failed to show that the Slater Savings Bank had any funds on hand at the time it made this exchange on its books, with which it could have met the checks of the depositors on whom collections were sent. In disposing of the case on this state of facts the court said:

"We are not disposing to hold that the mere canceling of a liability to one debtor and the transferring it to another on the same books is an actual increase of assets.

"For these transfers to have such an effect there must have been funds in the bank upon which such transfers could have operated. The transfer of a mere naked liability from one creditor to another on the bank books added not a dollar to the Slater bank's assets."

It seems clear that if there had been funds in the Slater Savings Bank sufficient to meet the checks of the depositors who owed the collection items, transfers made on the books of the bank would have increased its assets. In the case at bar, the evidence shows that the bank had sufficient funds to meet the $400 check drawn by Van Hoozer for the purpose of paying the interest on plaintiff's note. For these reasons the case cited by appellant does not support its contention.

Respondent cites many cases from other jurisdiction, some of which lend color to his contention, but they are not in line with the holdings of our own courts and for that reason are not controlling.

There appears of record an agreement that the bank had sufficient assets with which to pay plaintiff's claim and that such assets passed into the hands of the commissioner in charge of said bank.

Judgment reversed and cause remanded with directions to allow plaintiff's demand as a preferred claim and order it paid as such. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.