### HIRNING v. FEDERAL RESERVE BANK OF MINNEAPOLIS, MINN.

No. 2225.

District Court, D. Minnesota, Fourth Division.
July 28, 1930.

F. M. Selander, of Minneapolis, Minn., and Hall & Eidem, of Brookings, S. D., for plaintiff.

A. Ueland and Sigurd Ueland, both of Minneapolis, Minn., for defendant.

SANBORN, District Judge.

This is a suit to recover $21,355.82, the amount of two remittances sent by the Farmers' National Bank, of Brookings, S. D., to the defendant on the 16th and 17th days of November, 1926, which it is alleged constituted an unlawful preference under 12 USCA § 91.

The Reserve Bank, as a clearing house and agent for its member banks, received, on November 13, 1926, for collection, checks on the Farmers' National Bank of Brookings to the amount of $22,114.22, and on November 15th similar checks to the amount of $15,020.88. On those days it mailed cash letters, being the checks referred to, to the Brookings bank for collection and remittance. Under its rules, the Reserve Bank was agent for the forwarding banks, with the right to send the checks to the Brookings bank for collection and to receive money or drafts therefor. The Reserve Bank granted provisional credits to the forwarding banks on their reserve accounts for the checks, but retained the right to reverse the credits if the checks were not paid. Of the checks sent to the Brookings bank, it accepted $22,059.11 of those included in the cash letter of the 13th, and $14,880.86 of those included in the cash letter of the 15th. The checks were not actually charged to the accounts of its depositors until November 18th, when the bank was in charge of a national bank examiner. On the 16th of November, the Brookings bank sent two drafts to cover these cash letters to the Reserve Bank, in which the Reserve Bank was named as drawee. The reserve account of the Brookings bank in the Reserve Bank was not large enough to take care of the drafts. For the purpose of providing sufficient funds therefor, it sent to the Reserve Bank, on the evening of the 16th, checks, for collection and credit, drawn by others on other banks to the amount of $10,029.07, on which the Reserve Bank collected $8,355.82, which was credited to the reserve account of the Brookings bank. It also remitted to the Reserve Bank, on November 17th, $13,000 in currency, which was also credited to its reserve account. The $13,000 in currency was actually mailed after a resolution of the board of directors of the Brookings bank, closing the bank, had been adopted on the evening of November 16th. The Brookings bank closed its doors, so far as the transaction of ordinary banking business was concerned, at 4 p. m. on the 16th. While

there is some uncertainty as to the time of the adoption of the resolution and the mailing of the checks, I find that the $10,029.07 of checks was also mailed after the adoption of the resolution closing the bank, that the bank was then insolvent, and that both remittances were made "in contemplation of insolvency." See Ball v. German Bank (C. C. A.) 187 F. 750. It was determined, however, during banking hours on the 16th, to send the remittances. While the condition of the bank was substantially the same for several days prior to the adoption of the resolution, it is apparent that the determination to close it by those responsible for its conduct did not occur until the evening of the 16th. At that time it was evidently determined that it was impractical to borrow sufficient funds to keep the bank open, and that lack of public confidence in the bank made it advisable to close its doors. Some eighteen banks had recently failed in Brookings county, three of them in the city of Brookings, and a rapid decline in deposits shortly before the bank closed indicated a dark future for it even if it was able to secure the necessary funds to continue in business.

On the morning of the 17th, the Reserve Bank was notified that the Brookings bank had closed, but that sufficient funds had been sent to the Reserve Bank to take care of its cash letters. The Reserve Bank did not charge up the drafts drawn by the Brookings bank to its reserve account, but reversed the credits given to the forwarding banks, notifying them that if permitted to charge up the drafts, it would later give them credit. On January 27, 1927, relying upon advice of counsel, a letter from the then receiver, and a letter from J. E. Fouts, assistant supervising receiver, division of insolvent national banks, which letters were construed as granting permission to charge the drafts to the reserve account, the Reserve Bank did charge them to that account, and credited the forwarding banks with the amount of the checks contained in the cash letters of November 13th and 15th. Then followed this suit by the present receiver to recover the remittances.

The receiver claims that the Reserve Bank was a creditor; that in making the remittances the Brookings bank intended to prefer the Reserve Bank as a creditor and to prevent a ratable application of the assets of the Brookings bank to the payment of its debts as provided by law. All of this the Reserve Bank denies.

The question presented is one about which there can be and is a difference of opinion. I do not find that this exact situation has ever been presented to a federal court. It is obvious that if the Reserve Bank was a creditor of the Brookings bank at the time these remittances were made, the receiver should prevail. Ball v. German Bank, supra.

It is clear that the Reserve Bank was not originally a creditor of the Brookings bank; that it was a mere agent for the forwarding banks, responsible only for its own negligence. Federal Reserve Bank of Richmond v. Early (C. C. A.) 30 F. (2d) 198; Early, Receiver v. Federal Reserve Bank of Richmond, 281 U. S. 84, 50 S. Ct. 235, 74 L. Ed. 718. The Reserve Bank did not own the checks which constituted the cash letters and it was a matter of indifference to it whether the checks were paid or not.

The receiver claims that the Reserve Bank became a creditor when it accepted the drafts or, at any rate, when it charged them up to the reserve account of the Brookings bank. I am unable to see that the relation which it bore to the Brookings bank originally was ever changed. It was at all times acting on behalf of its principals, the forwarding banks, as their agent, and, under the rules which governed its operations, it had the authority to send the checks to the Brookings bank for collection and take drafts which were sent in payment therefor. As agent, it was authorized to appoint the Brookings bank an agent to collect from itself these checks and to require the Brookings bank to account for the checks or their proceeds. The agreement of the Brookings bank was to remit for such checks as it accepted or collected. It was the agent of the Reserve Bank for that purpose. If it was to charge them to the accounts of its depositors, its duty was to remit for them in cash or its equivalent. It was not the debtor of the Reserve Bank for the amount of those checks; but, if it accepted them, its position was that of an agent who had received money or its equivalent for his principal and which in equity belonged to the principal. If the Brookings bank had used these checks for its own purposes, without accounting for them, it would have been guilty of conversion. If, instead of charging the checks to the accounts of its depositors, it had collected the checks in cash from them, that cash would have belonged to the Reserve Bank, and if it had been mingled with the other cash of the bank, the receiver could have been required to pay it over on the theory that the cash was impressed with

a trust to the extent of the amount for which the Brookings bank should have accounted. The liability of the Brookings bank to account became absolute upon the acceptance of the checks. Quoting from Federal Reserve Bank of Richmond v. Early, supra, 30 F. (2d) 199:

"The only question that can arise is: When does this right of the owners of the checks become fixed, so as to constitute it a charge upon the reserve balance? We think that it becomes so fixed when the drawee bank, either unequivocally accepts the checks, as in this case, or, by failing to return them promptly, becomes chargeable with them under the terms of the agreement."

It has been held by the Supreme Court of Virginia, in Federal Reserve Bank of Richmond v. Bohannan, 141 Va. 285, 127 S. E. 161 (following Federal Reserve Bank of Richmond v. Peters [Prince Edward-Lunenburg County Bank] 139 Va. 45, 123 S. E. 379), that a Reserve Bank which has received an uncollectible draft as a remittance for a cash letter has a lien upon the cash in the vaults of the bank for the amount of the draft, which it can enforce against a receiver. If those decisions are correct, the Reserve Bank could have collected from the receiver an amount sufficient to make the drafts which it had received from the Brookings bank good, even if no remittances had been made.

While it is apparent that the managing officers of the Brookings bank, during banking hours on the 16th day of November, realized the probability that the bank would not reopen the following day—which, no doubt, was the reason for sending drafts to the Reserve Bank drawn on it rather than on other banks—the bank had accepted the checks sent to it as agent for collection. It intended to account for the collection of the checks by sending sufficient cash and cash items to the Reserve Bank to take care of the drafts. Prior to the adoption of the resolution closing the bank, it segregated from its assets the cash and cash items to be sent to the Reserve Bank.

My conclusion is that the receiver cannot recover in this case, even though these remittances were made in contemplation of insolvency: First, because the Reserve Bank was never a creditor of the Brookings bank, and the only relation which ever existed between the two was that of principal and agent; second, because the rights of the general creditors of the Brookings bank were in no way affected by the remittances, for the reason that the Reserve Bank, as principal, could have impressed a trust upon the cash and cash items segregated from the other cash of the bank, or, if it should be held that that was not a sufficient designation of the specific property to make good the drafts, then upon so much of the bank's general cash as was necessary to make the drafts good.

Finding the facts and the law to be as above stated, my conclusion is that the defendant is entitled to a judgment of dismissal. Let judgment be entered accordingly.

The plaintiff is allowed an exception to the denial of his motion for judgment in his favor, made upon the sole ground that the evidence will support no other conclusion.