Argued ·February 5, affirmed February 19; rehearing denied March 25, 1924.

# FIRST NATIONAL BANK OF SHREVEPORT, LOUISIANA, *v.* STATE BANK OF PORTLAND.

(222 Pac. 1079.)

**Banks and Banking—Relation of Bank in Respect to Specific Sum to be Transmitted to a Third Person Held to be in Nature of Trust.**

1. As respects right of preference, where a specific sum of money is delivered to a bank with directions to transmit it or substitute other money in place of it, and then transmit the substituted money to a particular person or bank, the relation of principal and agent, as well as that of bailment, arises, and bank's possession is that of bailee, and in carrying out instructions

---

1. Trust or preference in respect of money used to purchase exchange or to be transmitted, see note in 16 A. L. R. 190.

it acts· as agent and owner; such fiduciary relation being in the nature of a trust which continues until the money is sent in conformity to given directions.

**Banks and Banking—Contract to Transmit Funds Held not to Create Trust Entitling Transferee Bank to Preference.**

2. Where depositor withdrew from its checking account sums of money, which it turned over to bank with directions to transmit it to a foreign bank, with instructions to credit it to a third person, and thereafter the bank wired the foreign bank to credit the sums to the third person, that it was remitting by mail, and then remitted to the foreign bank by draft on its depository, *held,* that the relation of principal and agent did not arise between bank and its depositor, and that in paying the money to the third person before receipt of the directions the foreign bank became a general creditor, which relation still existed on bank's becoming insolvent, and it was not entitled to preference.

**Banks and Banking—When Receipt of Money by Insolvent Bank Creates Trust Stated.**

3. As respects right of preference, where officer of a bank, knowing it to be insolvent, receives money for a draft on a correspondent which has no funds for its payment, and the bank has no assurance that the draft will be honored, receipt of the money is wrongful, and bank holds same as trustee.

From Multnomah: Walter H. Evans, Judge.

Department 2.

On February 14, 1922, Hopkins & East Leasing Company withdrew from its checking account in the State Bank of Portland $2,003.80, and received from that bank a receipt in these words:

"Portland, Oregon, Feb. 14, 1922.
"Received of Hopkins & East Leasing Company Two Thousand Three and 80/100 Dollars ($2003.80) to be wired to First National Bank of Shreveport, Louisiana, for credit of William E. Hopkins.
"State Bank of Portland."

On the day following the same company drew its check upon the same account for $1,002.55 and received from said bank a like receipt for the last-named amount. On February 16, 1922, the superintendent

3. Right to preference for money paid to insolvent bank for draft, see notes in 10 L. R. A. (N. S.) 928; 39 L. R. A. (N. S.) 563.

of banks took charge of the affairs of said bank.   Mr.
Voget, formerly the assistant cashier of the insol-
vent bank, whose testimony is wholly uncontroverted,
testified: "On the fourteenth day of February and on
the fifteenth day of February the Hopkins Leasing
Company gave their check in the amount of $2,000
plus the cost of telegraphic transfer and $1,000 plus
the cost of telegraphic transfer, respectively, in favor
of the State Bank of Portland and put these checks
into our exchange window with instructions to wire
that amount, $2,000 and $1,000, to Louisiana for the
credit of Mr. Hopkins, and a receipt was issued for
that amount to the Hopkins Leasing Company.   We
thereupon wired, using the American Bankers' Code,
to the First National Bank of Shreveport, Louisiana,
to credit Mr. Hopkins with this amount, that we
would remit by mail at the close of business on that
day, 14th and 15th.   We drew our draft on the National
City Bank of New York City in the amount of $2,000
and the amount of $1,000 on the 15th in favor of the
First National Bank of Shreveport, Louisiana, in
payment of this telegraphic transfer. * * Q. Upon
what correspondent bank did you draw those drafts?
A. National City Bank of New York.   Q. Was there
money in that bank to pay these drafts?   A. Yes, sir."
When translated the telegrams read: "Credit ac-
count of William E. Hopkins Two Thousand dollars
[in one, $1,000 in the other].   We are remitting by
mail."   Upon receipt of the telegrams the Shreve-
port Bank credited its account with William E. Hop-
kins with said sums and he immediately withdrew the
entire amount from the bank.   Upon notice of the
failure of the issuing bank, the National City Bank
of New York City refused to honor the drafts.   The
First National Bank of Shreveport filed a claim with

the superintendent of banks, claiming a preference for the sum of $3,000, the amount it so credited and paid to Hopkins. The superintendent of banks, in his report to the Circuit Court for Multnomah County of the indebtedness of the bank, listed the claim of the First National Bank of Shreveport, as an unpreferred claim for $3,000. Objections thereto having been filed, the Circuit Court held that the Shreveport bank was not entitled to a preference over the general creditors of the bank, but was entitled to have its claim for $3,000 reinstated as a deposit of that amount and to distribution upon said sum as an unpaid depositor, and from this order and judgment the First National Bank of Shreveport has appealed.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. W. O. Sims.*

For respondent there was a brief over the name of *Messrs. Bowerman & Kavanaugh,* with an oral argument by *Mr. Jay Bowerman.*

RAND, J.—1, 2. Where a certain specific sum of money is delivered to a bank with directions to transmit that particular money or to substitute other money in place of it and then transmit the substituted money to a particular person or bank, the relation of principal and agent, as well as that of bailor and bailee, arises from the transaction. The bank's possession of the money is that of a bailee, and in carrying out the instructions of the owner of the money the bank acts as agent for the owner. This fiduciary relation of the bank in respect to the money is in the nature of a trust, and the trust continues until the money is sent in conformity to the given directions.

As long as the money remains in the possession of
the bank, the party delivering it to the bank is both
the legal and beneficial owner of it. As the title to
the money does not pass to the bank, the money it-
self does not belong to the bank and become a part
of its funds. If the contract is that the bank shall
not transmit the particular money delivered to it,
but shall substitute other moneys for it, such as cur-
rency in place of gold, or the like,. and then transmit
the substituted money, the bank, in making such sub-
stitution and transmission, is acting as agent for its
principal in respect to the business of its principal,
and hence the fiduciary relations between the bank
and its principal in respect to the substituted money,
so long as it is in the hands of the bank, is not de-
feated, but continues unaffected by the fact that other
moneys have been substituted for those originally
paid to it. But there is a well marked and well recog-
nized legal distinction between a transaction of that
character and the one disclosed by the evidence in the
instant case. Here, neither of the contracts, that is,
the contract of the State Bank with the payer and
the contract of the State Bank with the Shreveport
Bank, contemplated that the State Bank should send
any actual money to anyone. Under its contract with
the payer, as evidenced by the receipts given for the
money by the bank and accepted by the payer, the
bank, in consideration for the money paid to it, un-
dertook to telegraph the Shreveport Bank to give
credit to William E. Hopkins for the sum of $3,000,
and to secure a credit for him in that bank for that
amount. Upon failure to comply with its undertak-
ing, the payer could sue to recover the money back
or for breach of contract. Under this contract the
title to the money paid in consideration of the bank's

promise immediately passed to the bank and the money became a part of the bank's funds. The bank, not having contracted to act as agent for the payer, the relation of principal and agent did not arise between the bank and the payer. As the money paid belonged to the bank, there could be no bailment because in all bailments possession is severed from the ownership. Hence, neither a bailment, an agency nor any fiduciary relation did or could arise from the transaction. The contract between the bank and the payer was purely legal in its nature and there was nothing of the nature of a trust in it.

The contract between the two banks, as evidenced by the telegrams, was that if the Shreveport Bank would credit the account of William E. Hopkins in that bank with the sum of $3,000 and pay him that sum, the State Bank, in payment thereof, would remit that amount by mail. The evidence discloses that there had been similar transactions between the State Bank and the Shreveport Bank, pursuant to which Hopkins had been credited with various sums under like directions and promises, and that settlement therefor had always been made by drafts drawn by the State Bank of Portland upon the National City Bank of New York, payable to the order of the Shreveport Bank, and this method is customary in dealings between banks. Giving to these telegrams that meaning which the parties themselves, through their previous dealings, placed upon them, and that which accords with the usual course of dealings between banks, the undertaking of the bank was that it would remit the amount by mail, not in actual money, but in drafts upon its correspondent, and that if the correspondent failed to pay the drafts when presented, the State Bank would take up and pay them on de-

mand. Until the drafts were actually received by the Shreveport Bank and had been presented to and paid by the correspondent bank, the Shreveport Bank was under no obligation to credit Hopkins' account with or pay him the sum of $3,000, but, having credited his account with the sum of $3,000 and having paid him said sum upon the credit of the State Bank, the Shreveport Bank became a creditor of the State Bank for that sum. The relation of debtor and creditor thus arising continued to exist until payment of the debt by the State Bank was made, and, as payment thereof became impossible through the insolvency of the State Bank, that relation still exists. In the absence of fraud, performance by the Shreveport Bank of a contract of this character did not in itself make the State Bank a trustee for the Shreveport Bank or create any fiduciary relation between the two banks. The Shreveport Bank is therefore a general and not a preferred creditor of the State Bank: *Legniti* v. *Mechanics' etc. Bank,* 230 N. Y. 415 (130 N. E. 597, 16 A. L. R. 185); *Spiroplos* v. *Scandinavian Bank,* 116 Wash. 491 (199 Pac. 997, 16 A. L. R. 181).

The distinction between the contract where the banker agrees to send money and one where he agrees to send a telegram establishing a credit with his correspondent is pointed out by the court in *Legniti* v. *Mechanics' etc. Bank, supra,* in these words:

"There is a marked distinction between these transactions which I have just described and a direction to a bank or other person to transmit a certain specific sum of money to a person abroad. In such cases the bank or transmitter is the agent of the person paying the money, and until the money is sent holds it as agent or trustee for the owner. Such were the cases of *Musco* v. *United Surety Co.,* 132 App. Div. 300 (117 N. Y. Supp. 21), and *People ex rel.*

*Zotti* v. *Flynn,* 135 App. Div. 276 (120 N. Y. Supp. 511). In these latter transactions the intention of the payer is that the money he gives to his agent shall be sent abroad. It is the amount which he gives that is to be transmitted. How it is sent may be immaterial to him. If there be time, currency might be purchased and sent. If not, it may be transmitted in any form recognized in financial circles. It is not at all necessary that the sender or agent have credit in the place to which the money is to be sent. On the other hand, in the contract for credit it is not a specific sum which is to be sent, but rather a specific credit which is to be purchased. The amount paid varies with the market. The actual thing that is done by the sender in both of these cases may or may not be the same, but the practice of the merchants and banks has recognized a difference; so have the courts.''

3. Where an officer of a bank, knowing it to be insolvent, receives money for a draft on a correspondent who has no funds for its payment and the bank has no assurance that the draft will be honored, the receipt of the money is wrongful and the bank holds the same as trustee, but where, as in the instant case, it clearly appears from the undisputed evidence that at the time of the transaction complained of, the bank had sufficient funds in the hands of its correspondent to pay the drafts when presented, and having no reason for believing that the drafts would not be honored, the rule seems to be established that the holder of the draft is not entitled to preference: See annotation, 16 A. L. R. 190 et seq.

The lower court decided that the Shreveport Bank was entitled to be subrogated to the rights of a depositor in said bank for the amount of its credit, thus placing that bank on an equality with the unpaid depositors of the bank. The ruling of the court upon this point has not been appealed from, and we are not

required to pass upon it.   The position thus secured by the Shreveport Bank is as favorable as it is entitled to.

The decision of the Circuit Court is therefore affirmed.

AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BURNETT and COSHOW, JJ., concur.