**MOTHERSEAD, Bank Com'r, v. WILEY et al.**

No. 15966—Opinion Filed Feb. 9, 1926.

(Syllabus.)

1. **Banks and Banking—Assets of Failed Bank—Nature of Title of Bank Commissioner in Charge.**

The State Bank Commissioner in charge of the assets of a failed bank acts in the capacity of a receiver and holds the property of the failed bank coming into his hands by the same right and title as the bank for whose property he is such receiver, subject to the liens, priorities, and equities existing at the time of the failure of the bank.

2. **Mortgages—Assignee of One of Series of Mortgage Notes Given Priority Over Assignor in Distribution of Proceeds of Property.**

Where a person holding all of a series of notes secured by mortgage assigns one of them, the assignee is entitled to be preferred to the assignor and the receiver of the assignor in the distribution of the proceeds of the mortgaged property.

3. **Appeal and Error—Review of Equity Case—Evidence.**

In reviewing an appeal in a cause of purely equitable cognizance, the Supreme Court will examine and weigh the evidence, but will not reverse the judgment of the trial court, unless the same is against the clear weight of the testimony.

Error from District Court, Cotton County; A. S. Wells, Judge.

Action by J. A. Wiley against W. A.

Bonds and Eugenia Bonds, his wife; Roy Walcott, as State Bank Commissioner of the State of Oklahoma; the Oklahoma State Bank of Walters, Okla., B. S. Coleman, and Ida B. Coleman, his wife; R. Peeples and Libby Gordon. Judgment for plaintiff and Ida B. Coleman, R. Peeples, and Libby Gordon, defendants and cross-petitioners. Defendant Bank Commissioner appeals. Affirmed.

M. W. McKenzie and Gentry Lee, for plaintiff in error.

Stevens & Cline and J. W. Brooks, for defendants in error J. A. Wiley, Ida B. Coleman, Libby Gordon, and R. Peeples.

PHELPS, J. The Oklahoma State Bank of Walters was a banking corporation, having a capital stock of $50,000 and engaged in the banking business; O. G. Lierly being president, B. S. Coleman, vice president, and W. A. Bonds, cashier. The record discloses that the corporation owned certain town lots, upon which the bank erected a building costing approximately $85,000, taking the money from the deposits of the bank to meet the costs of such construction. After the building was thus erected, the record title to the lots upon which the same was located was, by the corporation, transferred to W. A. Bonds, the cashier, who executed 110 promissory notes of $500 each, aggregating $55,000, payable to B. S. Coleman, the vice president of the bank, such notes being payable ten years after date and bearing interest at the rate of eight per cent. per annum, such interest payments being evidenced by coupons attached to the notes. To secure the notes thus executed, Bonds, joined by his wife, Eugenia, executed a mortgage to Coleman covering the real estate upon which the bank building was located for the sum of $55,000. When the notes were thus executed, Coleman indorsed them in blank without recourse. Whereupon J. A. Wiley purchased 40 of the notes, numbered from 1 to 40, paying the face value in cash therefor, and Lierly, the president, wrote Wiley's name in the blank indorsement and delivered the notes to him. At the same time Coleman made an assignment to Wiley of a $20,000 undivided interest in the mortgage given to secure the payment of the notes. Later, Ida B. Coleman, R. Peeples, and Libby Gordon, each purchased four of the $500 notes, aggregating $2,000 each, which notes were delivered to them in the same way Wiley's were delivered to him, making a grand total of 52 of the notes, aggregating $26,000, that were thus transferred. The remaining notes, aggregating face value of $29,000, remained in the bank, and it appears that the bank on more than one occasion hypothecated the

notes, but each time they were ultimately returned to the bank. It further appears that the bank remained in possession of and paid the taxes on the real estate, the interest on the notes transferred, and also collected the rents derived from that part of the building not occupied by the bank.

The bank became insolvent and was taken over by the State Bank Commissioner, and the interest not being paid upon the notes held by Wiley, suit was commenced by him in the district court of Cotton county to obtain judgment for the amount of the notes and to foreclose the mortgage given to secure their payment, in which action W. A. Bonds and Eugenia Bonds, his wife, Roy Walcott as State Bank Commissioner, the Oklahoma State Bank of Walters, B. S. Coleman, Ida B. Coleman, R. Peeples, and Libby Gordon were all made defendants.

Ida B. Coleman, R. Peeples, and Libby Gordon answered and filed their cross-petition praying for judgment for the amount due on their several notes and foreclosure of the mortgage given to secure the payment thereof. The Bank Commissioner filed his answer, claiming that the notes aggregating $29,000 remaining in the bank were assets of the bank by reason of the indorsement of such notes by Coleman, prayed for judgment for the amount due on the notes, and that upon foreclosure of the mortgage, he be adjudged entitled to share in the proceeds of the sale of the mortgaged property under the mortgage, proratably with the other holders of the notes.

The case was tried to the court. and at the conclusion of the trial. judgment was rendered in favor of the plaintiff, and cross-petitioners holding the notes, for the full amount due on their respective notes, and giving them a lien under the mortgage against the mortgaged property for the amount due, and denying the bank's claim to participate in the security, for the reason that the notes and mortgage were in fact the obligations of the bank instead of the individual officers of the bank, which upon their face they purported to be, and to reverse this judgment the Bank Commissioner prosecutes his appeal to this court.

It will be observed that the gist of this action is whether the notes aggregating $29,000 held by the bank at the time it was taken over by the Bank Commissioner were assets of the bank by reason of the indorsement of such notes to the bank by Coleman, as claimed by the plaintiff in error, or whether all the notes in question were at all times in fact the equitable obligations of the bank, as claimed by the defendants in error.

A careful examination of the record in this case reveals an unusual, if not an astounding, scheme for financing the building of this banking house. Since the capital stock of the bank was only $50,000, under the law, not more than one-third of this amount could be invested in its place to do business, but notwithstanding this fact, the president, vice president, and cashier, who were also the sole directors of the bank, entered into the scheme whereby the record title to the real estate was transferred to Bonds, the cashier, and Bonds, the cashier, mortgaged the same to Coleman, the vice president, to secure the payment of 110 $500 notes executed by the cashier to the vice president, and Coleman, the vice president, then endorsed the notes in blank, left them in the bank with Lierly, the president, who sells and delivers a portion of them, accepting the purchase price of the notes for the bank, and Bond reconveys the property to the bank by warranty deed, which deed is deposited in the bank but not placed of record, no claim being made that any consideration for any of these transactions ever passed from one to the other of the officers of the bank.

If the 58 $500 notes remaining in the bank's hands were bona fide obligations of Bonds to the bank, by reason of their indorsement to the bank by Coleman, then there is merit in the contention of plaintiff in error that the lien of plaintiff in error upon the real estate in question stands upon the same basis as does the lien of the four persons who bought the other 52 notes, but, upon the other hand, if this scheme for financing the bank's building was merely a subterfuge among its officers and the notes secured by the mortgage were the equitable obligations of the bank, the contention of plaintiff in error is without merit.

It cannot be said that the Bank Commissioner stands in any more favorable light as regards these transactions than the bank would have s'ood in, had it remained solvent, as he is merely a trustee or receiver for the bank. Lawson v. Warren, 34 Okla. 94, 124 Pac. 46; Briscoe v. Hammer, 50 Okla. 281, 150 Pac. 1101; State ex rel. Strain v. Wells, 98 Okla. 169, 223 Pac. 694.

After a careful examination of the record in this case, we have no doubt as to the correctness of the judgment. It would be inequitable for the bank, through its own officers, to execute notes secured by a mortgage on its own real estate, sell a portion of the notes to innocent purchasers and upon a foreclosure participate proratably in the sale price of the security with such innocent purchasers.

In Lawson v. Warren, supra, in the first paragraph of the syllabus this court said:

"Where a person holding all of a series of notes secured by mortgage assigns one of them, the assignee is entitled to be preferred to the assignor and the receiver of the assignor in the distribution of the proceeds of the mortgaged property."

Where the bank claims to be the holder of the notes upon which it seeks to prorate in the security, the burden is upon it to show that it is a bona fide holder in due course, for value and in good faith. Mangold v. Utterback, 54 Okla. 655, 160 Pac. 713; Collins v. Waide, 70 Okla. 191, 173 Pac. 835; State v. Emery, 73 Okla. 36, 174 Pac. 770; McKone v. McConkey, 77 Okla. 3, 185 Pac. 520. And since the Bank Commissioner stands in the shoes of the bank, this burden would naturally rest upon him, and we have no difficulty in reaching the conclusion that he failed to sustain the same.

The trial court made exhaustive findings of fact, and one of the principal errors complained of by plaintiff in error is that such findings of fact are contrary to the evidence, but the rule that in cases of purely equitable cognizance this court will not disturb the judgment of the lower court unless contrary to the clear weight of the evidence is too well settled to justify discussion. Turner v. Turner, 106 Okla. 261, 233 Pac. 1057; Brown v. Privette, 109 Okla. 1, 234 Pac. 577; Johnston v. Key, 110 Okla. 19, 235 Pac. 211; Simpson v. Schaff, 110 Okla. 90, 236 Pac. 384.

The record in this case abundantly justifies the judgment, and is therefore affirmed.

All the Justices concur.

Note.—See under (1) 7 C. J. p. 482 §12 (Anno). (2) 27 Cyc. p. 1304. (3) 4 C. J. p. 900 §2869; 2 R. C. L. 202; 1 R. C. L. Supp. p. 441; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81.