## HALL v. SULLIVAN.

No. 16715—Opinion Filed June 8, 1926.

Rehearing Denied Feb. 15, 1927.

1. **Banks and Banking—Collections—Relations Created—Insolvency of Collecting Bank.**

A state bank which receives collection items forwarded by holders is the agent of the forwarder, and if the collections are made in cash and remittances of proceeds made by cashier's checks, a trust is thereby created which the holders of such checks may enforce against a receiver or the Bank Commissioner who takes charge of the collecting bank as insolvent before such cashier's checks are paid.

2. **Same—Effect of Collection Items Being Checks on Failing Bank.**

But where such collection items consist of checks drawn on the collecting bank, which said bank collects merely by charging same to the individual deposit of the drawer, no actual addition being made to the general funds of the bank, no trust relation is created which will authorize recovery against the receiver or Bank Commissioner in the absence of necessary allegations in the petition showing that at the time said collections were so made the actual cash on hand in the insolvent bank was equal to or in excess of the collections so handled.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Carter County · Asa E. Walden, Judge.

Action by C. P. Hall against R. L. Sullivan, liquidating agent of Security State Bank of Healdton, to recover the sum of $846, alleged to be a trust fund. From an order sustaining a general demurrer to plaintiff's petition and from a judgment dismissing the action, plaintiff brings error. Affirmed.

This action was commenced December 30, 1924, by plaintiff filing in the district court of Carter county his petition against the defendant wherein it was alleged, in substance, that on certain dates stated in the petition plaintiff issued six certain checks on the Security State Bank of Healdton in which plaintiff was a depositor, said checks being

dated, respectively, January 9, 11, 12, 14, and 16, 1924, and aggregating the sum of $846; that said checks were drawn and issued by plaintiff against his account in said bank in payment of certain matured bills owing by him and were 'n due course presented by the payee thereof to said Security State Bank for payment, and, that each and all of said checks were by said Security State Bank marked paid and were charged to the account of plaintiff; that said checks so issued by plaintiff were presented to the Security State Bank for payment through corresponding banks in which the payees of said checks had deposited the same 'or collection, but that instead of forwarding the cash in payment of said checks after the same had been charged to plaintiff's account the Security State Bank issued its cashier's checks in payment thereof and forwarded the same instead of the cash to the corresponding banks through which said checks had been sent; that before said cashier's checks so issued by the Security State Bank could be presented in due course of business said Security State Bank was taken in charge by the State Bank Commissioner as an insolvent bank and the defendant, R. L. Sullivan, was placed in charge thereof as liquidating agent; that when said cashier's checks so issued by the Security State Bank were presented in due course of business, each and all of them were dishonored and payment refused because of the insolvency of the Security State Bank; that thereupon this plaintiff was required to and did pay to his creditors holding said cashier's checks the amounts represented thereby in the total sum of $846, and thereupon became subrogated to all of the rights and remedies of the original holders of said cashier's checks; that by reason of the checks drawn by plaintiff on his account in said bank having been marked paid and charged to plaintiff's account the amount thereof in the sum of $846 of the assets of said Security State Bank immediately became a trust fund for the payment of said creditors of plaintiff, and that when the defendant took charge of said Security State Bank as liquidating agent he took the assets of said bank subject to said trust, and that the said sum of $846 remains a trust fund in the hands of said defendant as liquidating agent; that plaintiff is entitled to recover the same with interest thereon at the rate of 6 per cent. per annum from January 24, 1924.

To the petition of plaintiff the defendant interposed a general demurrer, and on July 10, 1925, after a hearing thereon, the trial court entered its order sustaining this demurrer to the petition of plaintiff. Thereupon plaintiff elected to stand upon his petition, and the court entered judgment dismissing the action. To reverse this order and judgment of the trial court, this proceeding is prosecuted by petition in error and transcript of the record.

Champion, Champion & George, for plaintiff in error.

Sigler & Jackson, for defendant in error.

Opinion by LOGSDON, C. Two propositions are presented and argued in the briefs in this court and are stated in the brief of plaintiff as follows:

"First. Can the plaintiff maintain this action against the defendant, R. L. Sullivan, as liquidating agent of the Security State Bank of Healdton, Okla., or is the plaintiff's cause of action one against the state and, therefore, not maintainable without the state's consent?

"Second. Does the plaintiff's petition set forth facts sufficient to constitute a cause of action against the defendant and entitle the plaintiff to a payment of this claim in full?"

It is evident that the second of these propositions includes and comprehends the first, for, unless the second can be sustained, the first is wholly immaterial. Thus, an action which invades and interferes with the exclusive jurisdiction and control of the State Bank Commissioner in his administration of the assets of an insolvent bank for the benefit of its general creditors is, in effect, a suit against the state and may not be maintained except by consent of the state. State v. Norman, 86 Okla. 36, 206 Pac. 523; State ex rel. v. Quigley, 93 Okla. 296, 220 Pac. 918. Recovery of a trust fund, however, is not an interference with such jurisdiction and control, and is not a suit against the state, because trust funds are not assets in the hands of the Bank Commissioner. Lawson, Receiver. v. Warren, 34 Okla. 94, 124 Pac. 46; Briscoe v. Hamer, 50 Okla. 281, 150 Pac. 1101.

Therefore, the first and primary question here involved is whether the petition of plaintiff states facts sufficient, as a matter of law, to show that the funds sought to be recovered constituted trust funds in the hands of the Bank Commissioner, through his liquidating agent, and were not a part of the assets of the failed bank. Since the judgment of the trial court is based upon its order sustaining a general demurrer to plaintiff's petition and upon plaintiff's election not to plead further, it follows that all facts well pleaded in the petition are admitted and

it becomes a question of law whether those facts show the existence of a trust fund for which plaintiff is entitled to maintain this action.

It is alleged that plaintiff was a depositor in the Security State Bank and that the checks here involved were drawn against that deposit. It is further alleged that his deposit was at all times ample to cover the total amount of these checks, and that said checks were in fact charged against said deposit, thus reducing the amount thereof in a sum corresponding to the total of said checks. Plaintiff alleges that he was thereafter required to, and did, pay to the respective holders of said checks the respective amounts of the cashier's checks issued as remittances to cover said several collections, and that he is entitled to be subrogated to the rights of such holders as against the Security State Bank and its liquidating agent.

Admitting the right of subrogation, the question is: What were the rights of the original holders of these checks which plaintiff acquired by assignment? Plaintiff epitomizes his contention in the following language at page 33 of his brief:

"We appreciate the fact that there are some conflicting decisions as to whether or not such facts constitute a trust relation, giving to the payees of the checks a preference right in the distribution of the moneys coming into the hands of the liquidating officer after insolvency, or whether the same constitutes a mere relation of debtor and creditor, but we believe that the weight of authority, both in numbers and in reasoning, supports our position that a trust relation is created and that the bank on which checks were drawn acts as the agent of the payees or forwarding banks of the checks, and holds the funds after the payment in trust for the use and benefit of the payees, and upon insolvency the funds pass as a trust fund into the hands of a receiver of such insolvent bank."

Plaintiff alleged that all of the checks involved were sent by him to the payees named therein and were by such holders deposited for collection in their respective banks of deposit, such collecting banks forwarding same to the Security State Bank "for payment and remittance." Upon such a state of facts the law applicable is thus stated in 3 R. C. L., p. 636, sec. 265:

"The general rule is that the title to commercial paper received for collection by a bank and forwarded to its correspondent in the usual course of business does not vest in such correspondent. The relation between the two banks, as between the depositor and the forwarding bank, is that of principal and agent merely. The correspondent bank receives such paper as an agent for collection, and the title does not pass. When, however, the paper has once been collected by the correspondent bank, and it has received the proceeds therefor, the relation between the remitting bank and itself is changed from that of principal and agent to that of debtor and creditor, and title to such proceeds will, in the absence of an agreement to the contrary, vest in the correspondent bank. The banks are presumed to contract in view of the well-known and established custom of banks, when acting as collecting agents for other banks, or, indeed, for any customer, to put all collections made by them into the general fund of the bank, unless directed to make of them a special deposit, and use them from hour to hour and from day to day in the transaction of their current business. Such a presumption is not, however, a rule of law which cannot be overcome by an express agreement of the parties to the contrary, and in any event if, before receiving the proceeds of paper sent for collection, the correspondent bank becomes insolvent, it cannot thereafter obtain title to the process (proceeds)."

In section 268, ib., it is further said.

"Where a bank improperly mingles the proceeds of a collection with its general funds, to enable the customer to demand payment in preference to general creditors it is necessary that the proceeds be traced into the hands of the receiver according to the rules prevailing in the particular jurisdiction as to tracing trust funds. The decisions in the several jurisdictions are not in accord as to the degree of certainty with which such proceeds must be traced. According to the present prevailing doctrine the identical proceeds need not be traced, it being sufficient to show that the assets in the hands of the receiver were necessarily increased by the commingling of the proceeds with the general funds of the bank. And it has been held that, where after the commingling the bank makes disbursements from the general mass, such disbursements will be deemed to have been taken from the funds properly belonging to the bank, and the unexpended balance will be impressed with a trust in favor of the person for whom the collection was made. On the other hand, where disbursements are made by the bank from the general mass, the general assets of the bank are not available as a trust fund to satisfy the demands of the person for whom the collection was made. So, also, where the collection is made by charging the amount to the account of the debtor who is a depositor in the bank, the assets of the bank are not augmented thereby, since no money passes to the insolvent bank and the customer has no preferential claim on the assets in the hands of the receiver. Where collections have been made for several customers and the proceeds improperly have been commingled with the general funds of the bank, and the funds

which pass into the hands of the receiver are insufficient to satisfy all their demands, such customers should share pro rata in the distribution."

Plaintiff did not allege in his petition the amount of the general funds of the bank on hand when the several checks were presented, or that said general funds were sufficient to pay said checks. He merely alleged that his individual deposit was sufficient. In Bolles' Modern Law of Banking, vol. 2, ch. 17, sec. 8, on the subject of collections, the author says:

"As cash only can be received in payment the insolvency of a bank before receiving it leaves the collection incomplete. In like manner, if a collecting bank receives a check on itself in payment of paper received for collection, which is credited (charged) to the maker, and a draft is sent to the sending bank in payment and never paid by reason of the drawer's failure, the collection is not complete. * * * It is a fraud for a drawee insolvent bank to which a check is sent for collection and cannot pay, to charge it against the maker as paid and send a draft to the other bank in payment. Consequently, failing to collect the draft, the owner of the check, who has not been negligent in any way about its collection, can sue the maker for the amount as though he had never received anything from him."

If the general funds of the bank, which included plaintiff's individual deposit, had been so depleted at the time of the presentment of the six checks for payment that the bank was unable to pay the same in cash, the charging of same to plaintiff's account and the issuance by the bank of its worthless cashier's checks to cover the remittances clearly did not constitute a payment of the six checks. The collection was not complete. No trust fund had been created for payment of the cashier's checks. In the absence of an allegation showing sufficient general funds in the bank at the time the six checks were presented to have paid the same in cash, the trial court could not, and this court may not, indulge a presumption to that effect. In the absence of a showing that such was the fact, there is nothing upon which a trust can be based. This is forcibly illustrated by three of the cases cited and relied upon by plaintiff in his brief.

The cases of Goodyear Tire & Rubber Co. v. Hanover State Bank et al. (Kan.) 204 Pac. 992 and Kesl et al. v. Hanover State Bank et al. (Kan.) 204 Pac. 994. are companion cases and arose out of the same bank failure. In the first of these cases a draft for $1,-364.50 was the collection item involved. and in the second of these cases three items.

one for $487.20, another for $6.84, and a third for $612.90 were involved. The cash on hand in the general fund of the Hanover Bank at the time these collection items were received amounted to $6,971.95, while the total of these collection items was $2,-471.44. The collections were made as in the instant case by charging the various amounts to the individual deposits of the debtors in that bank and remittances were made to cover same by cashier's check, as in the instant case. The Kansas court held in these cases that this created a trust relation and that the holders of the cashier's checks issued by the bank to cover these collections were preferred claimants against the bank in the hands of its receiver.

In Hawaiian Pineapple Co., Ltd., v. Browne (Mont.) 220 Pac. 1114, also cited and relied upon by plaintiff, the amount of the collection item was $4,671.28, and it was shown that between the time when the collection item was received and collected by the bank and the date of its closing the lowest sum on hand in the general funds of the bank was $1,801.62. The court held that a trust was created in the general assets of the bank to the extent of the lowest balance of $1,801.62. upon the theory that if the amount of cash on hand in the bank at the time of making the collection by charging same to a depositor's account was sufficient to pay the claim of $4,671.28, the same was thereafter dissipated to the lowest amount remaining in the bank at any time between collection and remittance, and that if any larger balance existed during this period of time it must have been caused by deposits made by others which came into the bank's hands and upon which the holder of the preferred claim could have no lien.

Another case cited and relied on by plaintiff is Federal Reserve Bank of Richmond v. Peters et al. (Va.) 123 S. E. 379, but an examination of that case discloses that it is not in point nor applicable to the facts here involved, for the reason that it is shown in that case that the Federal Reserve Bank had an express agreement with the Prince Edward-Lunenberg County Bank. which became the insolvent bank. by which all checks for collection sent by the Federal Reserve Bank to it were to be sent direct by mail and the proceeds of such collections were to be shipped by the collecting bank in currency or other money direct to the Federal Reserve Bank. Upon the collection item involved in that case the Prince Edward-Lunenberg County Bank violated this agreement and made its remittance to the

Federal Reserve Bank by draft on the Bank of Commerce & Trusts. It was held in that case that the funds collected under the agreement between the two banks constituted a trust fund which the Federal Reserve Bank was entitled to recover from the receiver of the insolvent collecting bank.

Because there is an entire absence of necessary allegations in plaintiff's petition to show the existence of a state of facts which would result in creating a trust relation between the Security State Bank and the holders of the cashier's checks here involved, and based upon the legal principles announced in the authorities heretofore cited and quoted from, it must be concluded that plaintiff's petition in the instant case did not state facts sufficient to entitle him to maintain this action upon the theory of a trust relation. Having reached this conclusion upon the second proposition involved in this proceeding, it is unnecessary to pass upon or determine the first proposition stated.

For the reasons herein stated, the judgment of the trial court is in all things affirmed.

By the Court: It is so ordered.

Note.—See 7 C. J. p. 627 §301 (Anno) ; 3 R. C. L. p. 636; 1 R. C. L. Supp. p. 869; 4 R. C. L. Supp. p. 210.