## FIRST STATE BANK OF BRISTOW et al. v. O'BANNON.

No. 18823.    Opinion Filed April 10, 1928.

(Syllabus.)

1. **Banks and Banking—Insolvent State Bank—Requisites of Preferred Claims Against Bank Commissioner.**

Before a claim can be allowed as a preferred claim against the State Bank Commissioner in charge of an insolvent bank, it is necessary to establish, first, that the claim in question is a trust fund; and, second, that the fund in some form was a part of the assets of the bank which passed into the hands of the commissioner.

2. **Same—Bank as Agent in Collection of Draft—Proceeds as Trust Fund in Hands of Bank Commissioner.**

A state bank accepting for collection, drafts expressly marked for collection and remittance, handles such collection as agent, and the proceeds become a trust fund in the hands of the bank, subject to be traced into the hands of the Bank Commissioner who takes over the bank as insolvent.

3. **Trusts—Commingling of Funds—Presumption of Trustee Using Own Money First.**

When a trustee commingles his beneficiary's money with his own, and then invades the common store, he will be presumed to have used his own money first; the law presuming that he does right rather than wrong.

4. **Banks and Banking—Failed State Bank —Preferred Claim—Proceeds of Draft Received for Collection and Remittance as Trust Fund.**

Where a bank accepts drafts for collection under the express conditions of "collection and remittance" and receives in payment of such drafts a check drawn upon itself by drawee of the drafts, who has ample funds in deposit to pay his check, and the bank has ample funds to pay the check, the transaction is the same as though the bank had actually received cash in payment of the draft. The assets of the bank being thus augmented, the amount of such drafts in such sum as so collected is a trust fund and so a preferred claim.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by Frank O'Bannon against the First State Bank of Bristow, O. B. Mothersead, acting Bank Commissioner, and W. S. Simmons, liquidating agent. Judgment for plaintiff, and defendants appeal. Affirmed.

Erman S. Price, Pounders & Pounders, and M. B. Cope, for plaintiffs in error.

Robson & Moreland, for defendant in error.

RILEY, J.   O'Bannon forwarded to the First State Bank of Bristow two drafts with bill of lading attached, totaling $1,027.70, drawn upon Gibbs for collection and remittance. These drafts were received by the bank, and in due course presented to Gibbs for payment. Gibbs paid the same to the collecting bank by checks drawn upon his account in the collecting bank—his account was adequate to pay the same. His account in due course was charged with the amount of the drafts, and a corresponding credit given the bank's cashier's checks outstanding, and the bank issued its cashier's check to O'Bannon & Company of Claremore for the amount of the collection. The bank became insolvent and the payment on the cashier's check was refused. During the entire transaction and after insolvency there was sufficient cash on hand in the bank to pay the amount in controversy.

The decisive question here involved is whether the relation between O'Bannon and the bank was that of debtor and creditor or that of principal and agent, and consequently whether O'Bannon was a mere general creditor or a preferred claimant.

This question is settled in this jurisdiction by Hall v. Sullivan, 123 Okla. 233, 253 Pac. 45; Kansas Flour Mill Co. v. New State Bank of Woodward, 124 Okla. 185, 256 Pac. 43; Thomas v. Mothersead, 128 Okla. 157, 261 Pac. 363; Bank of Commerce v. Ingram, 33 Okla. 46, 124 Pac. 64; State ex rel. v. Excello Feed Co., decided January 10, 1928, 131 Okla. ___, 267 Pac. ___.

In affirming the decision of the trial court we are not unmindful of conflict in the decisions of. other jurisdictions as well as conflict in the decisions of the federal courts. We think the status is dependent upon the intention of the parties. 3 R. C. L. 632. There must be assent of the party to whom the debt is due in order to change the admitted original relation of agency. An agent should not be permitted by its act alone to change the relation by sending its check and so convert its trust fund into a debt. Holder v. Western Ger. Bank, 6th C. C. A., 136 Fed. 90.

The Ninth Circuit Court of Appeals spoke in Spokane & E. Trust Co. v. U. S. Products Co., 290 Fed. 884, and held:

"The rule as established by the weight of authority is that where a bank transmits negotiable paper for collection and returns, the bank which receives the check and undertakes the collection is the agent of the principal, and becomes a trustee of the proceeds for the owner, and, except where consent is given, the collecting bank cannot avoid such relationship and create that of mere debtor and creditor."

The case of Bank of Poplar Bluff v. Millspaugh, 313 Mo. 412, 281 S. W. 733, distinguishes the methods and custom of banking in the reciprocal account and remittance methods of doing business, and holds that where such an item is sent for collection and remittance, the relation is that of principal and agent, and the funds so transmitted are impressed with a trust by reason of the intention of the parties. Federal Reserve Bank of St. Louis v. Millspaugh (Mo.) 282 S. W. 706; Bank of America v. Waydell, 187 N. Y. 115; In re Bank of Cuba in N. Y., 191 N. Y. S. 88; National Life Ins. Co. v. Mathers, 118 Ill. App. 491.

The case of First Nat. Bank v. Walker, 289 Pa. 252, 137 Atl. 257, holds:

"When paper is accepted for collection under express directions to collect and remit, money in the hands of the collecting bank is then a trust fund for the real owner."

Likewise, in Nebraska, Griffin v. Chase, 54 N. W. 572; in South Dakota, Plano Mfg. Co. v. Auld, 86 N. W. 21; in Minnesota, Eifel v. Veigel, 211 N. W. 332; and Arkansas, Rainwater v. Federal Res. Bank of St. Louis, 172 Ark. 631, 290 S. W. 69; Goodyear Tire & Rubber Co. v. Hanover State Bank, 109 Kan. 772, 204 Pac. 992; Kesel v. Hanover St. Bank, 109 Kan. 776, 204 Pac. 994; Hawaiian Pineapple Co., Ltd., v. Browne, 69 Mont. 140, 220 Pac. 114; Federal Res. Bank of Richmond v. Peters, 139 Va. 45, 123 S. E. 379; Federal Res. Bank of

Richmond v. Bohannon, 141 Va. 285, 127 S. E. 161; Federal Res. Bank v. Quigley (Mo. App.) 284 S. W. 164; Thompson v. Bank of Syracuse (Mo. App.) 278 S. W. 810; Macey v. Roedenbeck, 227 Fed. 346; American Can Co., v. Williams, 176 Fed. 817; Atherton v. Green, 179 Fed. 806; Archibald & Lewis Co. v. Banque I. DeCommerce, 214 N. Y. S. 369; National Park Bank v. Seaboard Bank, 114 N. Y. 28; Rock County Bank v. Hollister, 21 Minn. 385; Third Nat. Bank v. Clark, 23 Minn. 263; Merchants' Nat. Bank v. Hansan, 33 Minn. 40, 21 N. W. 849, 53 Am. Rep. 5; In re Seven Corners Bank, 58 Minn. 5, 59 N. W. 633; State v. Bank of Commerce, 61 Neb. 181, 85 N. W. 43, 52 L. R. A. 858; Jones v. Kilbreth, 49 Ohio St. 401, 31 N. E. 346; Peoples Bank v. Jefferson County Sav. Bank, 106 Ala. 524, 17 So. 728, 54 Am.. St. Rep. 59; Boykin v. Bank, 118 N. C. 566, 24 S. E. 357; Bank v. Bank, 119 N. C. 307, 25 S. E. 971; Tyson & Rawls v. Western Nat. Bank 77 Md. 412, 26 Atl. 520, 23 L. R. A. 161; Hoffman v. First Nat. Bank, 41 N. J. Laws, 604; McKeon v. Meade County Bank, 37 S. D. 100, 156 N. W. 795; McLeod v. Evans, 66 Wis. 406, 28 N. W. 173, 57 Am. Rep. 287; Lawrence v. Lincoln County Trust Co., 125 Me. 150, 131 Atl. 863; White v. Miners Nat. Bank, 102 U. S. 648, 26 L. Ed. 250; Sweeney v. Easter, 68 U. S. 166, 17 L. Ed. 681.

We shall examine the cases quoted from by the appellant, the Bank Commissioner.

Goyner v. Williams (Cal.) 143 Pac. 736. There the instructions were not to "collect and remit," but only "for collection." There the stipulation was that the custom was to credit the proceeds of drafts sent for collection. There the intention of the parties governed. The later case in California, Luckehe v. First Nat. Bank, 223 Pac. 547, to the contrary, held and distinguished the former case based upon custom established therein. In the case at bar no custom is established.

The next case—Young, State Bank Examiner, v. Teutonia Bk. & Trust Co. (La.) 64 South. 806. There had been a prior course of dealing between the parties.

In U. S. Nat. Bank v. Glanton, 146 Ga. 786, 92 S. E. 625. L. R. A. 1917F, 600, the draft for collection was sent to defendant bank without any specific instructions. There was no instruction to collect and remit as herein.

In Union Nat. Bank v. Citizens Bank, 153 Ind. 44, 54 N. E. 97, cited, the court said, under the facts, that it was understood that upon collection the appellant was

to receive a credit and that appellee might use the money in its own business.

Commercial Nat. Bank v. Armstrong, 148 U. S. 50, 37 L. Ed. 365, 13 Sup. Ct. Rep. 533. This case was construed in Spokane & Eastern Trust Co. v. U. S. Steel Products Co., 290 Fed. 884, where it was said:

"There the contract required a settlement between the banks only upon certain days of each month, and under the facts, the court concluded that the collections made were not to be placed on special deposit and held until the day for remitting, but were to be treated as a general deposit, the transmitting bank being regarded as a general depositor."

In Peters Shoe Co. v. Murray, 31 Tex. Civ. App. 259, 71, S. W. 977, it was said:

"It is the well-settled doctrine in this state, as well as in a large number of the states of the union, that in a case like the present, where a special agency is created and the bank has no authority to hold and credit the proceeds of the draft, but is bound by the agreement to remit them immediately to its correspondent, the relation of trustee and beneficiary is created and the money collected or its equivalent can be recovered from the assignee of the insolvent bank."

But the preference was there denied for failure to identify the trust funds. However, the later case in Texas is to the contrary. First National Bank of Beaumont v. Union Trust Co., 155 S. W. 989.

In Citizens Bank of Pinewood v. Bradley, 134 S. E. 510, 136 S. C. 511, cited, South Carolina, by divided court, sought to settle the perplexing question largely in reliance upon the authorities therein cited—adding but little itself to the unsettled condition and relying in reasoning, no doubt, to some extent upon cases of debtor and creditor class, one of which cited therein is Briscoe v. Hamer, 50 Okla. 281, 150 Pac. 1101.

In Hecker-Jones-Jewell Milling Co. v. Cosmpolitan Trust Co. (Mass.) 136 N. E. 333, 24 A. L. R. 148, cited, the court held that the plaintiff, by making the draft payable through the trust company to the order of the Bank of Buffalo, authorized a collection by the method followed, which contemplated the relationship of debtor and creditor, and was within the agreement of the parties. The case is not contrary to the principle of agency, but distinguished from that principle.

We, therefore, conclude as to the first proposition that when the State Bank of Bristow received the drafts in question with bill of lading attached with specific instruc-

tions for collection and remittance and collected the same by receiving the check from the drawee of the draft upon the collecting bank, which held ample funds to pay the check, and when the collecting bank issued its cashier's check in payment thereof for the drawer of the draft, the relation between the drawer and the bank was that of principal and agent and the ample cash in the collecting bank was impressed with a trust which entitled the drawer to a priority.

It is contended by appellant that upon the payment of the drafts by a check of the drawee of the draft upon his deposit in the collection bank, the consequent charging of the drawee's account and issuing of the bank's cashier's check in payment of the drafts did not constitute an augmentation of the assets in the bank, and, therefore, the trust cannot be held to exist.

The bank at the time of payment had funds to pay the drafts. It was the duty of the bank then to so pay the same. Equity will consider that as done which ought to have been done. Bank of Poplar Bluff v. Millspaugh, 313 Mo. 414, 281 S. W. 733; Arnott v. Bingham, 9 N. Y. S. 68; National Life Ins. Co. v. Mathers, 118 Ill. App. 491.

In Rainwater v. Fed. Reserve Bank, 172 Ark. 631, 290 S. W. 69, it was said:

"Certainly there is no necessity for the drawee of the draft to take its check to its bank, the collector, and present it and receive the money and hand it back to the bank in payment of the draft." Kesl v. Hanover St. Bank, 109 Kan. 776, 204 Pac. 994; Goodyear Tire & Rubber Co. v. Hanover St. Bank, 109 Kan. 772, 204 Pac. 992; Hawaiian Pineapple Co. v. Browne (Mont.) 220 Pac. 1114; Federal Res. Bank v. Peters, 139 Va. 45, 123 S. E. 379; Federal Res. Bank v. Bohannon, 141 Va. 285, 127 S. E. 161.

The appellant cites Midland Nat. Bank v. Brightwell, 148 Mo. 358, 49 S. E. 994, but the Missouri court in Federal Reserve Bank v. Millspaugh, supra, expressly held that decision was not decisive, for therein the reciprocal account method existed and there was not sufficient funds in the bank to pay the draft of the bank so drawn.

People v. Bank, 78 N. Y. 269, 32 L. R. A. 717, cited, was decided in 1879, and the same court adopted an opposed view in People v. Bank of Rochester, supra, and Arnott v. Bingham, supra.

Billingsley v. Pollock, 69 Miss. 759, 30 Am. St. Rep. 585, cited, being a case decided in 1892, and being under circumstances of instructions "for collection" and not collection and remittance.

Larabee Flour Mills Co. v. Bank, 13 Fed. Rep. (2d) 330, cited, supports the rule contended for by appellant. It follows a strict rule of construction in reference to tracing and identifying trust funds prevailing in that Circuit Court of Appeals. There is no decision of the Supreme Court of the United States upon the subject. It is noteworthy that Judge Faris dissented to the opinion cited with reasoning that to our view is sound. He points out the weight of authority in the federal courts to the contrary, says he is unable to follow the majority federal rule, for the reason that the stranger, the drawer of the draft, is thereby made to become a creditor without his consent and against his expressed intent. He says the situation should be taken at the time the receiver takes charge of the bank; that is, while the bank was a going concern it paid the drawee an amount due him equal to 'the draft it held for collection, and with that transaction the receiver was not concerned, for at the time he took charge the bank owed the drawee the sum of the draft less than before, and thereby it got into the bank's ·hands the sum which belonged to the drawer of the draft; that equity sometimes takes a short cut to ultimate results and regards that as done which ought to have been done. He says it is ridiculous to require the drawee to take out of the collecting bank, by his check, an amount equal to the draft, walk around the block and pay the same money into the bank in exchange for the draft held ·by the bank, that the cases hold that if the drawee pays the draft out of money from his pocket or by a check on another bank or even by giving his note to the collecting bank, the drawer would have become a preferred creditor.

Judge Pollock holds to the same view. He says in the memorandum opinion in Kansas Flour Mills Co. v. First Nat. Bank, supra, that the collecting bank by reason of its agency owed the duty to take the money out of the drawee's account and transmit the cash or its equivalent to the drawer, but instead, for convenience, it sent its draft which proved worthless in return. There it is pointed out the bank could not on its own motion, in failing to do its duty as agent, appropriate plaintiff's property or money and thus compel the assumption of the relation of debtor and creditor by mala fides; 'that neither the bank, its creditors, nor the receiver can profit by the bank's breach of trust in the transaction.

It is well stated in Kansas Flour Mills Co. v. New State Bank of Woodward, supra,

in regard to the payment of the drafts by the drawee:

"It would be an idle thing to hand you the amount of your check and receive, eo instanti, the sum back from you. We will consider that as done which should have been done."

And:

"It was the intention of all the parties that this fund should not be commingled with the other deposits, but that it should be a trust fund."

The Supreme Court of Nebraska aptly said in National Bank v. National Bank, 49 Neb. 781, 69 N. W. 115:

"A fund * * * with respect to which a bank has but a single duty to perform, and that to pay the money to the person entitled to it, is a trust fund and incapable of being commingled."

The cases to the contrary are divided as to the governing reason. Some of them bottom their holding upon the theory that the drawee giving his check upon his ample funds in the collecting bank does not augment the funds in the bank, and so the res of the trust cannot be traced and identified; others base their conclusion upon the premise that when the drawer of the draft sends the same for collection, the relation of principal and agent ensues, but when the bank performs its duty so far as to collect the amount of the draft, the relation changes to that of debtor and creditor. No reason other than custom warrants such a phenomenal transformation of relationship, and nowhere else in the field of law is there an example or analogy of the power of an agent altering the relationship between himself and his principal by his own act or desire, so as to bind his principal.

The cases to the contrary are not based upon the joint theories, but each predicates its judgment upon one or the other view. Neither theory has had the approval of this court. The change in relationship theory seems to us unsound. The nonaugmentation of assets view is too harsh as against the equitable principle heretofore set out. Applying both theories, we say all courts agree that in the beginning of such transactions the relation is that of principal and agent. Such being the case, we think the relationship should not be held to be transformed without consent of the principal. Very often such a principal may be willing to accept an agent for collection of a trust fund when he would not at all be willing to accept the relation of debtor and creditor.

The judgment of the trial court is affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, CLARK, and HEFNER, JJ., concur.

PHELPS, LESTER, and HUNT, JJ., dissent.