## MOTHERSEAD et al. v. HARRIS et al.

No. 21082.   Opinion Filed April 28, 1931.

M. B. Cope, for plaintiffs in error.

MacDonald & MacDonald, for defendants in error.

ANDREWS, J. The defendants in error instituted a suit in the district court of Bryan county against the plaintiffs in error to recover the amount of two drafts issued by the First State Bank of Calera, as a preferred claim against that bank, and recovered judgment therefor. From that judgment the plaintiffs in error appealed to this court. The parties will be hereinafter referred to as plaintiffs and defendants.

The agreed facts are that on January 6, 1927, the plaintiffs had a checking account in the First State Bank of Calera and the balance therein was $4,000; they owed two wholesale houses; on that date they drew a check upon their account in that bank for $366.76 which they presented to that bank, in exchange for which that bank issued a draft on the First National Bank of Durant payable to one of their creditors; on the same date they issued a check for $270.32 upon their account which they presented to that bank, in exchange for which that bank issued a draft on the First National Bank of Durant payable to Peters Shoe Company; the plaintiffs forwarded the two drafts to the payees therein named; in due course the same were protested by the drawee bank, the bank having been found insolvent on January 10, 1927, at which time it was taken over by the State Bank Commissioner; at the time the drafts were drawn and at all times thereafter up until the bank closed, the drawer bank had on deposit in the First National Bank of Durant, subject to draft, sufficient funds to pay the two drafts, and that balance passed to the State Bank Commissioner when he took over the failed bank as insolvent.

The State Bank Commissioner in charge of the assets of a failed bank acts in the capacity of a receiver and holds the property of the failed bank coming into his hands by the same right and title as the bank, of whose property he is such receiver, subject to the liens, priorities, and equities existing at the time of the failure of the bank. Mothersead v. Wiley, 114 Okla. 105, 243 Pac. 718.

Before a claim can be allowed as a preferred claim against the State Bank Commissioner in charge of a failed bank, it is necessary to establish that the claim is against a fund which is a part of the assets of the bank and which passed into his hands as such State Bank Commissioner and which is a trust fund. Thomas v. Mothersead, 128 Okla. 157, 261 Pac. 363; First State Bank of Bristow et al. v. O'Bannon, 130 Okla. 206, 266 Pac. 472.

The agreed facts show that the two drafts in question were drawn against the First National Bank of Durant. The failed bank had on deposit in that bank sufficient funds to pay those drafts at the time they were drawn, and that fund, as a part of the assets of the failed bank, passed into the hands of the State Bank Commissioner. There remains but one question, and that is, Did the fund against which this claim was made constitute a trust fund?

The plaintiffs asserted that the fund constituted a trust fund in that the issuance of the two drafts by the First State Bank of Calera constituted an assignment pro tanto of the amount thereof in the First National Bank of Durant, Okla., to the payees in the two drafts.

The plaintiffs rely on a statement made by this court in Thomas v. Mothersead, supra, but neither the statement quoted by them nor the opinion in that case supports their contention that the issuance of a draft amounts to an assignment of the amount thereof. The issue in that case was the relationship existing after the collection of a check drawn on a bank which had been forwarded to that bank for collection and remittance. This court therein held that under those circumstances the bank acted as the agent of the forwarder to collect the check and remit the proceeds, and that the relationship of principal and agent thereby established continued until the completion of the transaction. The remittance by the bank in the form of a draft was held not

to change the relationship of principal and agent to debtor and creditor. Such has been the holding of this court in Hall v. Sullivan, 123 Okla. 233, 253 Pac. 45; Kansas Flour Mills v. New State Bank, 124 Okla. 185, 256 Pac. 43; State ex rel. Mothersead v. Excello Feed Milling Co., 131 Okla. 100, 267 Pac. 833; and First State Bank of Bristow v. O'Bannon, supra, cited by defendants. In no one of those cases was the issue presented that is presented by the record in this case.

The plaintiffs cite 7 C. J. 751, and quote therefrom as au authority the portion of the text as follows:

"But one who purchased drafts from a bank when it was insolvent and had no reason to expect the drafts would be honored has been held entitled to a preference."

That is the exception to the general rule therein stated that:

"One who holds a check or draft of a bank which becomes insolvent before such check or draft is paid is not entitled to any preference over other creditors."

The agreed facts show that the issuing bank was insolvent on January 10, 1927. There is nothing in the record to show that it was insolvent on January 6, 1927, at the time of the issuance of the drafts. For that reason the authority cited by the plaintiffs, if otherwise applicable, has no application here. The cases cited in support of the exception quoted deal with the issuance by insolvent banks of drafts which are known to be worthless at the time of their issuance.

The defendants present the question of want of subrogation, but we do not need to consider that question in view of our decision on the main question submitted. However, in discussing the question of subrogation, the plaintiffs say in their briefs, "* * * in the case at bar no question is raised that the bank was not solvent on the day the checks were issued, and it was not taken over until a number of days later. * * *" That contention was necessary in order to support the theory of the plaintiffs that they were subrogated to the rights of the payees of the two drafts. We refer to it here only for the purpose of showing that the cases cited by the plaintiffs dealing with drafts issued by insolvent banks have no application here.

The plaintiffs cite no case or authority which, in our judgment, is controlling in this case. They think that the rights of the parties should not be determined under the Negotiable Instrument Law, but from the general principles of equity, taking into consideration surrounding facts and circumstances, and they argue that, since the plaintiffs might have drawn the cash from the bank and might have transmitted it to their creditors in some other manner, they are entitled to an equitable assignment of the amount of the two drafts. While it is true that the plaintiffs might have drawn the money from the bank and forwarded it to their creditors in some other manner, they did not do so. On the other hand, they might have sent their creditors checks. We will determine the case from the record made and the facts shown therein. Those facts show an ordinary commercial transaction which shows the purchase of these two drafts for a valuable consideration from a solvent bank without any knowledge on the part of the bank that the drafts would not be paid when presented for payment. There are no equities in the case, but purely a question of law.

Section 7665, C. O. S. 1921, furnishes us the definitions for the chapter on negotiable instruments. Section 7796, Id., defines a bill of exchange, and section 7797, Id., provides:

"A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same."

The entire question is discussed in the opinion of the Supreme Court of Iowa in Leach, State Superintendent of Banking, v. Mechanics' Savings Bank, 211 N. W. 506, 50 A. L. R. 388, in which the court said:

"The issuance of a draft or check upon a bank does not, since the passage of the Negotiable Instrument Act, in the absence of special facts or circumstances, operate as an assignment pro tanto of the fund against which the instrument is drawn.

"The intent of the provision of the Uniform Negotiable Instruments Act that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer was to make clear that thereafter the drawee would not be deemed liable to the holder, as had theretofore been held under the minority rule. * * *

"An intent to assign a deposit account cannot be shown by acts which are obviously done in conformity to the usages and rules of the law merchant."

—and the note thereto. The statute is controlling and the rule therein stated has been in force in this state since the decision in Guthrie National Bank v. Gill, 6 Okla. 560, 54 Pac. 434, in which it was held:

"A draft drawn in the ordinary form does

not constitute an equitable assignment, pro tanto, of funds in the hands of the drawee to the credit of the drawer, before such draft has been accepted or presented for payment."

· It was followed in First Nat. Bank of Durant v. School District, 31 Okla. 139, 120 Pac. 614; Ballen & Friedman v. Bank of Kremlin, 37 Okla. 112, 130 Pac. 539; and Bell-Wayland Co. v. Bank of Sugden, 95 Okla. 67, 218 Pac. 705.

The rule is stated in Standard Oil Co. v. Viegel, Commissioner of Banks (Minn.) 219 N. W. 863, as follows:

"It is well settled that the purchase of a bank draft, a cashier's check, or a certified check creates the relation of debtor and creditor between the bank and the purchaser, and that the purchaser is not entitled to a preference over other general creditors of the bank from which it was purchased. The following list of cases so holding is by no means exhaustive: People v. Merchants' & Mechanics' Bank, 78 N. Y. 269, 34 Am. Rep. 532; Legniti v. Mechanics' & Metals Nat. Bank, 230 N. Y. 415, 130 N. E. 597, 16 A. L. R. 185; Clark v. Toronto Bank, 72 Kan. 1, 82 Pac. 582, 2 L. R. A. (N. S.) 83, 115 Am. St. Rep. 173; Lloyd v. Butler Co. State Bank, 122 Kan. 835, 253 Pac. 906, 51 A. L. R. 1030; Beecher v. Cosmopolitan Trust Co., 239 Mass. 48, 131 N. E. 338; American Ry. Ex. Co. v. Cosmopolitan Trust Co., 239 Mass. 249, 132 N. E. 26; Spiropols v. Scandinavian-American Bank, 116 Wash. 491, 199 Pac. 997, 16 A. L. R. 181; First Nat. Bank v. State Bank, 110 Or. 601, 222 Pac. 1079; In re Citizens' Bank (Idaho) 255 Pac. 300; American Bank v. People's Bank (Mo. App.) 255 S. W. 943; Lamro State Bank v. Farmers' State Bank, 34 S. D. 417. 148 N. W. 851; Grammel v. Carmer, 55 Mich. 201. 21 N. W. 418, 54 Am. Rep. 363; Sunderlin v. Mecosta Co. Sav. Bank, 116 Mich. 281, 74 N. W. 478; Harrison, Receiver, v. Wright, 100 Ind. 515, 58 Am. Rep. 805; Citizens' Bank v. Bank of Greenville, 71 Miss. 271, 14 So. 456; Citizens' Bank v. Bradley, Examiner, 136 S. C. 511, 134 S. E. 510; People v. California, etc.. Co., 23 Cal. App. 199, 137 Pac. 1111, 1115; and a series of cases in 202 Iowa, beginning with Leach v. Battle Creek Sav. Bank, at page 871, see 211 N. W. 506-540."

We think no further citation of authority is necessary.

The judgment of the trial court is reversed, and the cause is remanded to the district court of Bryan county, with directions to vacate the judgment hereinbefore rendered and to allow the claim of the plaintiffs against the defendants as a general claim against the assets of the failed bank.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON. SWINDALL, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., not participating.